## IN RE HANSON.

No. 2646.   Decided July 1, 1916.   (158 Pac. 778.)

1. ATTORNEY AND CLIENT—DISBARMENT PROCEEDINGS—REFERENCE—FINDINGS—MODIFICATION. The findings of a referee appointed by the Supreme Court in a disbarment proceeding are, in a large sense, merely advisory, and the court can modify any finding or make new ones to conform to the evidence as it views it.   (Page 164.)

2. ATTORNEY AND CLIENT—DISBARMENT—CHARGES—EVIDENCE. To authorize the disbarment of an attorney, the charges should be clearly sustained by convincing proof and a fair preponderance of the evidence, but the techincal nicety of the criminal law is not applicable where the court is inquiring into the conduct of its own officers.   (Page 167.)

3. ATTORNEY AND CLIENT—DISBARMENT—EXAMINATION OF EVIDENCE. The conduct of a member of the bar of the Supreme Court, regularly employed to defend one charged with murder in the first degree, and who, knowing that the chief of police possessed a bundle of clothes which at the time of the shooting had been worn by the deceased and was keeping them to be used as evidence on the trial, pursuant to an arrangement, with a city detective, went to the police station, entered it from the rear and in a manner to avoid detection by the police, and received such bundle and left with it by a rear alley, when he was taken into custody by a police officer on information given by the detective, while not conduct calling for the drastic remedy of disbarment, was reprehensible to the last degree,

and would not be tolerated by the court, and he would be sus-
pended from practice for sixty days and ordered to pay the
costs and expenses of the proceeding, including the referee's
fees.   (Page 168.)

Original proceedings upon charges filed by the bar com-
mittee of the State Bar Association against Willard Hanson
a member of the bar of the Supreme Court, with a prayer for
his disbarment.

Respondent suspended for sixty days and ordered to pay
the costs of the proceeding.

*T. Marioneoux, Dickson, Ellis, Ellis & Schulder, W. T.
Gunter, W. H. King* and *Soren X. Christensen,* for respondent.
*A. R. Barnes,* Atty. Gen., and *E. O. Leatherwood,* Dist.
Atty., *amici curiae.*

FRICK, J.

On the 16th day of April, 1914, Mr. Ray Van Cott, Mr.
James H. Ball, and Mr. John Jensen, as members of the
State Bar Association, and as the grievance committee of said
association, filed charges against one Willard Hanson,
hereinafter called defendant, as a member of the bar of
this court, praying that a citation issue from this
court requiring said defendant to appear and answer the
charges filed against him, and that upon such hearing he be
disbarred, and that his certificate of admission to the bar of
this court be revoked and canceled.   This court appointed A.
R. Barnes, the Attorney General of this state, and E. O.
Leatherwood, the prosecuting attorney for the Third judicial
district of the state, to prosecute the charges preferred against
the defendant.   The defendant, by his counsel, appeared and
filed a motion to dismiss the charges filed against him upon
various grounds.   The motion was overruled, and the defend-
ant filed an answer denying all of the charges contained in
the complaint or information.   On the 15th day of January,
1915, this court appointed E. O. Lee, a member of the bar of
this court, referee, conferring upon him all the usual powers
in such cases, and directing him to hear the evidence offered

by both sides and to report his findings and conclusions to this court. The time for the hearing of the evidence, upon the request of the parties having been extended from time to time, the referee filed his final report on the 4th day of October, 1915. In said report the referee found in favor of the defendant upon the most serious charges preferred against him, but found against him upon one of the charges. Immediately upon the filing of said report defendant's counsel filed exceptions to the same, and moved this court to set aside the findings of fact and conclusions of law in so far as they were against the defendant; and counsel for the prosecution also filed exceptions thereto, and asked us to find upon the whole evidence that all the charges preferred against the defendant are true, the findings and conclusions of the referee to the contrary notwithstanding. The exceptions of both parties are no doubt based upon the theory, which is the correct one, that the referee's findings, in a large sense at least, are merely advisory, and that we can modify any finding or make new ones to conform to the evidence as we view it.

There were a number of charges preferred, all of which were set out in the complaint with much particularity and detail. We do not deem it necessary to repeat them here, nor even to state them in substance. The evidence produced in support of them and in favor of the defendant is also quite voluminous, covering 434 pages of typewritten legal cap. We have read the evidence, and, from a consideration of the whole thereof, we feel disposed to adopt and follow the findings of the referee. That conclusion necessarily results in overruling the exceptions of counsel for both sides, as well as in denying the request of counsel for the prosecution to recast the findings so as to make them read that the charges preferred against the defendant are all sustained, and the further request of counsel for the defendant to restate those found that are against the defendant so as to make them read in his favor, or that none of the charges are sustained.

Upon the one charge referred to, the referee in substance found that the defendant was regularly employed by one Alfred Sorenson, who then stood charged with the crime of murder in the first degree by shooting to death one Gillis, to

defend said Sorenson; that the chief of police of Salt Lake
City had in his possession a bundle of clothes, consisting of a
shirt, a coat, and other articles which, at the time of the shoot-
ing, were worn by said Gillis, and that said chief of police
was keeping said clothes to be used as evidence on the trial
of said case; that on the 4th day of September, 1912, shortly
after midnight, the defendant, pursuant to an arrangement
theretofore made with one of the detectives in the employ of
Salt Lake City, went to the police station where said clothes
were being kept for the purpose aforesaid, and, on arriving
there, entered said station from the rear and in a manner
so as to avoid detection by any of the other police officers on
duty, except said detective, and then and there received said
clothes, which were kept in a private room, from said detect-
ive, and, immediately after receiving them, departed from said
police station with said clothes, and, in doing so, again passed
out of the rear door into an alley and went down said alley
to one of the public streets of said city, where he was taken
into custody by a police officer with the clothes in his pos-
session upon the information given by said detective. The
referee specially found that the defendant pursued the course
he did in going to said police station and in receiving said
clothes to avoid detection by any of the police officers.

Upon the foregoing findings the referee also made conclu-
sions of law, in which he found that the defendant in the
particulars aforesaid "acted wrongfully, stealthily, surrepti-
tiously, and unlawfully and in a manner not in accordance
with the dignity of his profession, and is guilty of unprofes-
sional conduct in that regard." The findings are assailed
as not sustained by the evidence, and the conclusions are ob-
jected to as not supported by the findings. Without stating
the evidence here, it must suffice to say, for the present at
least, that we are clearly of the opinion that the referee, in
view of the whole evidence, could not well have found the
facts differently, nor have arrived at a different conclusion
with respect to them. As before suggested, we have the right
to look to the whole record to determine the quality of de-
fendant's conduct, and the responsibility of determining what
the result shall be upon the whole record likewise rests upon

us. As already intimated, in view of the character of the evidence, we have no disposition to go behind the findings of the referee with respect to the charges upon which he finds in favor of the defendant.

All the authorities are agreed that to authorize the disbarment of an attorney "the charges should be clearly sustained by convincing proof and a fair preponderance of the evidence." Some courts have held "that there must be more than a preponderance of the evidence; and that the proof must satisfy the court with a reasonable certainty." 2 Thornton on Attorneys at Law, Sec. 886. It is, however, also true, and the courts practically all agree, that "the technical nicety of the criminal law is not applicable to disbarment proceedings in which the court inquires into the conduct of its own officers." Id. Sec. 887. The foregoing statements really contain the whole gist of the law, which is sustained by both reason and common sense. To disbar an attorney is a very serious matter indeed. It not only may deprive him of gaining a livelihood for himself and a dependent family, but it may, and usually does, result in preventing him from making available all antecedent preparation, although that may cover practically the period of a lifetime. In no other calling are such far-reaching consequences visited upon a delinquent who has not been found guilty of some felonious act. The rule, therefore, that the evidence should be clear and convincing is based upon a most solid foundation. Upon the other hand, the acts of a lawyer should be above suspicion. In his care must be placed, and to his judgment must be confided, the most important affairs and trials of life. For that reason a wide latitude is allowed the attorney in determining for himself what action he should pursue in the discharge of that most sacred duty to his fellow man. The courts must, however, insist that the acts of an attorney shall be fair, just and reasonable, and shall comport with the dignity of his profession, and shall not transgress the rules of propriety, and under no circumstances be in violation of either written or unwritten law.

In a matter like that of inspecting and examining evidence that may become relevant and important in the course of a

trial, no attorney is driven to the necessity of having recourse
to clandestine methods to obtain a view or inspection of the
evidence. All he need to do is to apply to the court
in which the case is pending for an order of permis-          3
sion to examine and inspect the proposed evidence,
which usually is granted as a matter of course. Indeed, if a
trial court should depart so far from its duty as to deny a
reasonable examination and inspection of some proposed evi-
dence, summary relief could be obtained from this court. From
all the evidence in the record we are forced to the conclusion
that the defendant, to say the least, was guilty of a grievous
infraction of the rules of propriety in his acts and conduct re-
specting the bundle of clothes which were held by the chief
of police as evidence as aforesaid. It may perhaps mitigate
defendant's offense somewhat that the detective was desirous
that the defendant should apply for the clothes and should
receive them as he did, but that affords the defendant neither
excuse nor justification. He is a lawyer of more than average
ability, acquainted with all the rights and privileges of his
profession, and he must have known what his rights in the
premises were. The conduct on his part was wholly unneces-
sary, and it cannot be overlooked nor minimized by this court.
To do that would be a reproach to the law, as well as to this
court, and be a reflection upon the character and high stand-
ing of the bar of this state. The defendant's conduct, though
reprehensible, yet hardly calls for the drastic remedy of dis-
barment. To disbar him would, in our judgment, be quite as
unjust to him as to entirely absolve him from all blame, as he
asks to be, would be unfair and unjust to all the other mem-
bers of the bar of this court, as well as to the court itself. We
are convinced that the defendant deserves to be, and should
be, admonished that conduct such as he was guilty of is rep-
rehensible to the last degree, and cannot be indulged by any
attorney with immunity, and will not be tolerated by this
court.

In view, therefore, that these proceedings are not intended
as punishment in the sense that a sentence or judgment in a
criminal proceeding is deemed to be so, but are intended more
in the nature of an admonition to the accused and to protect

the public against future transgressions upon the part of the attorney, the only question is what, in justice and fairness to all, should our judgment be. After much reflection and consideration we have arrived at the conclusion that a sufficient admonition to the defendant will be to suspend him from the privilege of practicing his profession for a short time, and that in addition to that he make the State whole in the matter of costs and expenses which were necessarily incurred by reason of his culpable conduct. It is therefore the judgment of this court that the defendant be, and he hereby is, suspended from the privilege of practicing his profession for a period of 60 days, commencing on the 1st day of July, 1916, and ending on the 30th day of August, 1916, and that the defendant pay the costs of this proceeding, including the referee's fees, the stenographer's fees, and other court costs, which, in the aggregate, amount to the sum of $499.40. It is further ordered and adjudged that after the time aforesaid has expired, and upon complying with the judgment of this court in the payment of costs, then the defendant shall be, and he is hereby, ordered to be reinstated in all the rights and privileges of an attorney and counselor at law of this court. In case he shall fail or refuse to pay said costs to the clerk of this court within said 60 days, he shall stand suspended until such time as he shall do so.

McCARTY, J., concurs.

STRAUP, C. J. (concurring).

I too think the findings of the referee should be adopted. They exonerate the respondent on all of the charges except one. As to that the referee's finding is:

"That at about eleven or eleven thirty o'clock on the night of the 4th day of September, 1912, Mr. Leichter, then a member of the police force of Salt Lake City, Utah, met Mr. Hanson at or near the southeast corner of Main and First South streets, Salt Lake City, Utah, and after engaging Mr. Hanson in conversation, asked him if he did not want to see those clothes in the Sorenson Case, to which Mr. Hanson replied that he did, whereupon Mr. Leichter invited Hanson to come

to the police station at twelve o'clock that night, saying he would be there at that time and would let Mr. Hanson see the clothes. That Mr. Hanson afterward, and shortly after midnight, on that night, went to the southeast corner of State and First South streets in Salt Lake City, at which place he met one William Newton, walked down on the east side of State street to an alley that led to the back entrance to said police station, when and where he parted from Mr. Newton, and at said parting remarked to Mr. Newton, 'Wait a minute, I am going in here to see some evidence.' That Mr. Hanson then went down said alley and entered the police station at the back door thereof and into the detective's room, met Mr. Leichter there, who got the bundle containing said clothing and gave it to Mr. Hanson, whereupon Mr. Hanson took the same, carried it with him out through the back door of said police station, down said alley to State street, where he was taken into custody by the police officers. That Mr. Hanson went down the alley, entered the police station through the back door and into the detective room thereof for the purpose of avoiding detection by the police officers, other than Mr. Leichter, and took said bundle of clothing away with him, without opening and examining same, and retraced his steps out the back way from said station and down the alley for the purpose of avoiding the eyes of such other police officers as might then be about the police station.

"The referee further finds that the allegations in said petition, to the effect that on or prior to said 4th day of September, 1912, said Hanson offered a bribe, or bribes, to said Zeese or Leichter for the purpose of inducing them, or either of them, to assist him in obtaining the custody of said clothing is not established by the evidence."

Upon these findings the referee stated this conclusion:

"That in going to said police station at the midnight hour, down an alley and to the back entrance thereof, taking said bundle of clothes out of said station, through the back door and down the alley leading therefrom, he acted wrongfully, stealthily, surreptitiously, and unlawfully, and in a manner not in accordance with the dignity of his profession, and is guilty of unprofessional conduct in that regard."

By the information it was alleged that the respondent took the clothes with the intent to destroy them or to withhold them from the prosecution as future evidence. The respondent claimed and testified that on his request he was denied an inspection of the clothes at the police station by the chief of police, and then, at the invitation of the detective, went to the station and received them from him for an inspection and to be thereafter returned. The referee did not find whether the clothes were taken with the intent alleged in the information, or with that claimed and testified to by the respondent. There is no direct evidence to support the intention alleged in the information. Such intent, however, may be inferred from the clandestine manner in which the respondent entered the station and received the clothes. It is material to know whether the respondent took them with the intent as alleged or as testified to by him. As to that the record supports a finding either way.

There is no doubt that a trap was set for the respondent into which he voluntarily stepped. After he was denied an inspection of the clothes at the station, he was invited and induced by the detective to clandestinely go there at an unseemly hour, receive the clothes, and while he, groping his way back through the alley, with them in his possession, was, of course unbeknown to him, to be arrested by officers stationed there for the purpose, as though he had purloined them. Neither the finding made nor the evidence supports the claim that he had stolen them. The referee found that he had not bribed, nor offered to bribe, the detective to obtain possession of them. Still, the manner in which the respondent entered the station and departed therefrom with the clothes would justify an inference that he intended to take them and withhold them from the prosecution as future evidence. On the other hand, evidence was given to show that he had no such intent. I think the doubt in such respect should be resolved in his favor, and that his conduct in receiving and taking the clothes should be regarded as not criminal. Still, the clandestine manner in which he did receive and take them, and in which he attempted to depart with them, even with the intent as claimed by him, shows such misbehavior and delin-

quency upon his part as to subject him to discipline. I do not think it calls for disbarment or other drastic measures. At the same time, it should not go unrebuked. I therefore concur.