10 Utah 2d 217 (1960)
350 P.2d 631
IN RE GRANT MACFARLANE, SR., DISCIPLINARY PROCEEDING, UTAH STATE BAR.
No. 9051.
Supreme Court of Utah.
April 1, 1960.
John H. Snow, Salt Lake City, for plaintiff.
Edward W. Clyde, Ray R. Christensen, Ned Warnock, Salt Lake City, for defendant.
PER CURIAM.
Complaint was made to the Utah Bar Association charging respondent Grant Macfarlane, Sr. with unprofessional conduct in exercising fraud and undue influence upon Wilda Gail Swan while acting as her attorney and confidential advisor: particularly that he did so in connection with the drafting of her will and codicils thereto, which made him a major beneficiary of her estate. The background facts are set forth in In re Swan's Estate.[1]
A trial committee of three members of the Bar of neighboring Weber County was appointed to hear the matter. Having done so, the Committee recommended that Mr. Macfarlane should be disciplined. While the three agreed upon that conclusion, one of their number disagreed with the other two as to the method of reaching it.
The Board of Commissioners of the Bar then considered the matter, including the recommendation of the Committee, and in turn recommended to this court that an order be entered suspending Mr. Macfarlane from the practice of law for one year, and until he makes application to and is recommended for reinstatement by that Board.
The facts in summary and as reflected in the Committee's findings are: that respondent Macfarlane was the attorney and advisor for Miss Swan over a period of several years; that he was a prominent and successful attorney, greatly superior to her in intelligence, emotional maturity and social status; that she was definitely limited in those respects and had a mentality of a 12-year old child; that he used his superior position and talents to ingratiate himself with her and to overreach and use undue influence in his dealings with her in bringing about the advantage to him in her will and codicils prepared by him, by which he would have taken substantially one-third of her estate of approximately $285,000. Further detailing the conduct by which this was accomplished is unnecessary except to say that there were unusually large gifts to him made shortly after her father died and his stabilizing influence ceased; a maintenance of joint bank accounts and careful protection of funds available to respondent therein. All these things were done without Miss Swan's ever having the benefit of independent legal advice; and at no point did he ever suggest that she secure any, but on the other hand it appears that these matters were deliberately kept secret from anyone else including relatives, who, it might reasonably be supposed, would have advised and protected her interests with respect thereto.
Respondent maintains that there is no affirmative proof of any undue influence upon Miss Swan or misconduct upon his part. He avers that conceding the facts narrated above would, in a civil proceeding, shift the burden to the attorney to show an absence of undue influence as we discussed in the Swan case, supra. But that is not so here. He places reliance upon the fact that the trial committee in its report, adopted by two members of the Committee, indicated that it relied upon the presumption upon which the finding and judgment in that case was based. Whereas, respondent argues that the burden of proof in this proceeding is entirely different in that the presumption of undue influence which arises from the confidential relationship does not apply and that the persuasion of his misconduct must be by clear and convincing evidence. We agree that because of the seriousness of the consequences to the attorney involved touching upon the important right to follow his vocation and make a livelihood, that such is the established rule.[2]
The argument of respondent above stated erroneously assumes that a disciplinary proceeding follows the usual pattern of a trial and appellate review. The function of the Committee was to investigate, to hold a hearing, to find the facts and make a recommendation to this court. The Bar Commission was not bound to accept the findings and recommendations of the Committee, but it was its prerogative to consider all of the facts and circumstances of the matter including the findings and recommendation of the Committee, and to make its own determination and recommendation, which was done.
It is true that this court would not follow the finding and recommendation of the Commission if it appeared to be arbitrary, nor unless it was supported by substantial evidence. But it is quite impractical to expect that there be a review of the mental process by which the conclusion was arrived at. We are not concerned with the niceties of the term "presumption" but with a survey of the foundational facts and whether reasonable minds might regard the overall picture as meeting the required standard of proof that respondent engaged in unprofessional conduct. Conduct of the character in question is practically always practiced in secret and frequently comes to light after the victim is deceased. In the final analysis, any presumption of undue influence from facts such as the instant ones is but a recognition of the inferences which reasonably may be drawn from such facts.
On this problem it is relevant to observe that the propriety of the questioned conduct must necessarily be directed to the good conscience and ethical and moral standards of members of the Bar, and that the Bar Commissioners as its elected representatives are peculiarly suited to be the arbiters of such standards. They are vitally concerned with the general conduct of the Bar and its public relations and are also seriously concerned with a charge against a fellow member such as that involved in the instant proceeding.
It is basic that the responsibility is upon the Bar and the courts to supervise those licensed to practice and to disbar, suspend or discipline those guilty of infractions of proper standards[3] because the practice of law is not a right accorded all citizens, but is a privilege extended only upon showing good character, meeting required qualifications and maintaining proper professional standards.[4] In the prudent exercise of the power to discipline in order to maintain such standards lies the protection of the public and of the Bar itself.
We accept the fact that the final responsibility is upon this court and that this involves more than mere rubber stamp endorsement of the actions of the Commission. Nevertheless, because of the considerations just discussed, we deem it discreet and proper to indulge considerable latitude to the actions and judgment of the Commission in such matters and would not disregard its finding and recommendation in the absence of some persuasive reason for doing so.
The Commission has followed the procedure outlined by its rules, afforded the respondent opportunity to be heard in explanation of the accusation, and upon the basis of its appraisal of the full factual picture has made its determination and recommendation, with which we see no cogent basis for disagreement. Therefore, in accordance with the recommendation of the Board of Commissioners, it is ordered that Grant Macfarlane, Sr. be, and he hereby is, suspended from the practice of law in the state of Utah for a period of one year from the time the remittitur issues, and until he is reinstated upon recommendation of the Board of Commissioners of the Utah State Bar. It is further ordered that Mr. Macfarlane pay to the Utah State Bar all proper taxable costs expended in conducting this proceeding.
CALLISTER, J., having disqualified himself, WAHLQUIST, District Judge, participated in the hearing of this cause.
WADE, Justice (dissenting).
The recommendation by the Bar Commission is based on our affirming the trial court's finding of fraud and undue influence in a will contest case of In re Swan's Estate[1] where there is a more detailed statement of the case.
There we held that "[W]here a confidential adviser is made the beneficiary in a will, receives gifts or possible benefits from transactions with the person who relies on his advice and counsel on such matters in the making or execution of which he actively participates, a presumption of fraud and undue influence arises, which shifts the burden of persuading the trier of the fact that there was no fraud or undue influence." Based thereon we affirmed trial court's finding against Macfarlane although we held that there was no substantial evidence against him. Thus holding that the contestant had no burden to produce substantial evidence as long as the trial court was not convinced that he was free from fault. We further held that the basic facts which created this presumption, namely, that Macfarlane as attorney and confidential adviser drew Wilda Gail Swan's will bequeathing to him about $100,000 worth of property, which is much more than she left to her sister and sole heir, Theo Swan Hendee, was some evidence of fraud and undue influence for they showed motive and opportunity for him to overreach her. We further held that this was speculative and not substantial evidence of his fault, and if the burden of persuasion were not shifted to him a finding against him on that question would have been beyond the bounds of reason. We further noted that since at the time of the trial the testatrix was dead and unable to give her version of their dealings, he held a decided advantage over the contestant in the production of evidence of what occurred between them. In other words, he could fabricate a story of their dealings without fear of direct contradiction. We concluded that without the shift of the burden of persuasion by the presumption from the contestant to Macfarlane the case would have been reversed. We also held that Macfarlane's own testimony supported by independent testimony of corroborating circumstances was substantial evidence, sufficient to support a prima facie case which would reasonably support such a finding of no fraud or undue influence, but affirmed the trial court's decision against him because he failed to sustain his burden of convincing the trial court of his innocence.
There was a dissenting opinion in that case which analyzed the evidence against Macfarlane at length and concluded that the presumption did not shift the burden of persuasion to him and therefore contended that the judgment was not supported by substantial evidence. The prevailing opinion did not disagree with the dissent that there was no substantial evidence against Macfarlane, but held that the presumption shifted the burden of persuasion that there was no fraud or undue influence by him and thereby relieved the contestant of the burden of producing substantial evidence against him.
The trial court also found that Gail was incompetent to make a will. This we reversed, holding that the evidence of her subnormal mentality, of her epileptical seizures from childhood, of her great sympathy for the unfortunate, of her generosity in making gifts, of her seeking the attention of men, of her envy of her sister's social standing and married life, and of other idiosyncrasies and peculiarities did not constitute substantial evidence that she lacked the capacity to make a will in view of the other evidence to the contrary. We reversed that finding because the contestant had the burden of persuasion on that question which requires substantial evidence to support a finding in her favor.
Aside from the basic facts of the presumption and the facts that we do not have Gail's version of her transactions with Macfarlane and being subnormal mentally she might be easily misled or coerced, the evidence all indicates no fraud or undue influence by him. For eight years he acted as her attorney without any misunderstandings. She called regularly at his office, he often called at her home, sometimes with his wife, and she seemed to feel that he recognized her as a social equal which seemed to be important to her. The evidence indicates that she had a mind of her own with peculiarities and idiosyncrasies which she insisted on following. Gail was very friendly with her sister, Theo, who endeavored to provide Gail with proper care and protection. They corresponded, exchanged telephone calls and visited together. There is evidence that Gail envied Theo's married life and social standing and that Theo excluded Gail from all social contacts while Gail was visiting at Theo's San Francisco home. Gail also requested her business associates not to reveal her affairs to Theo. Their father also had some reservations in regard to Theo and her home in San Francisco. Theo testified that he practically never visited with her there because he hated San Francisco, although the family usually spent the winters in California. Before their mother's death they spent the winter at the home of the mother's sister and her husband in northern California. Gail was attracted to the aunt's husband but apparently not to Theo's husband. Theo's husband died suddenly in San Francisco just before Gail's death while Theo was with Gail during her last sickness. At that time Gail was past 60 years old. The foregoing circumstances suggest why Gail with her idiosyncrasies bequeathed to Macfarlane and others the major part of her property, and not so much to Theo.
Our holding in the previous case that there was no substantial evidence of fraud or undue influence is amply supported by the record which requires the same holding in this case. So unless the presumption shifts the burden of persuasion in this case we should not follow the recommendation for suspension. If the prosecution has the burden of persuading that there was fraud or undue influence the finding thereof was unreasonable and we should reject the recommendation.
There is no claim in this case that Gail was incompetent to make a will but much of the arguments seem to be based on that premise. Being competent to make a will she could legally bequeath her property to whom she wished. This is true even though she was subnormal mentally and had peculiarities and idiosyncrasies. Also, the fact that Macfarlane treated her well, attended to the minute details of her business, cultivated her friendship, made her feel that she was his equal socially does not indicate fraud or undue influence. Fraud or undue influence requires wrongful acts not the doing of good or befriending another. It requires deceit or false representations or coercion or causing another to act against his own will or contrary to his free agency.[2] Here Macfarlane is charged with fraud or undue influence not with inducing her to make a gift to him by friendly treatment nor with failure to induce her to seek independent advice and counsel as the prevailing opinion seems to indicate.
Whether the presumption of fraud and undue influence shifts the burden of persuasion to the accused in a disciplinary proceeding should be the controlling question in this case.
It is generally recognized and repeatedly so held by this court that in disciplinary proceedings an ethical violation must be proved by clear and convincing evidence.[3] On this question in In re Hanson we said:
"All the authorities are agreed that to authorize the disbarment of an attorney `the charges should be clearly sustained by convincing proof and a fair preponderance of the evidence.' Some courts have held `that there must be more than a preponderance of the evidence; and that the proof must satisfy the court with a reasonable certainty.' 2 Thornton on Attorneys at Law, § 886 * * *. To disbar an attorney is a very serious matter indeed. It not only may deprive him of gaining a livelihood for himself and a dependent family, but it may, and usually does, result in preventing him from making available all antecedent preparation, although that may cover practically the period of a lifetime. In no other calling are such far-reaching consequences visted upon a delinquent who has not been found guilty of some felonious act. The rule, therefore, that the evidence should be clear and convincing is based upon a most solid foundation. * * *." (Emphasis ours.) 48 Utah 163, 167, 158 P. 778, 779. [48 Utah 163, 158 P. 779]
If the presumption shifts the burden of proof in a disciplinary proceeding the same as in a civil action, then neither clear and convincing proof, nor a preponderance of the evidence or even substantial evidence is required to disbar an attorney where such a presumption is involved. This is entirely contrary to and inconsistent with the requirement of clear and convincing proof and allows an attorney to be disbarred without substantial proof that he has not always acted strictly in accordance with legal ethics. Such would seem to be a very harsh and tragic result as clearly pointed out in In re Hanson as quoted above. So a different rule should apply in a disciplinary proceeding than in a civil action which merely determines property rights.
Accordingly it is generally recognized that there is a presumption of innocence in a disciplinary proceeding involving a license to practice law. In such cases this court recognizes that clear and convincing evidence is required and it is universally recognized that at least something more than a preponderance of the evidence is required to disbar or suspend a license to practice law.[4] Such a rule requires a rejection of the recommended suspension and that Macfarlane be exonerated. For as already pointed out, the only evidence of fraud and undue influence is the showing of motive and opportunity and unless the burden of persuasion is shifted to him a finding against him would be unreasonable.
I have found no case and no case has been cited, although many involve the presumption of fraud and undue influence the same as was involved in the Swan's Estate case, where an attorney has been disbarred or his license suspended without substantial proof of an infraction of the rules of ethics. The cases of In the Matter of Herr and In re Mangan[5] relied on by the attorneys prosecuting this matter do not so hold. They simply analyze a long series of events which obviously show fraud and undue influence and hold that the evidence is sufficient to make a prima facie case. In neither case is there any claim that the presumption shifts the burden of persuasion to allow disbarment without substantial proof.
NOTES
[1] In re Swan's Estate, 1956, 4 Utah 2d 277, 293 P.2d 682.
[2] In re McCullough, 1939, 97 Utah 533, 95 P.2d 13.
[3] Utah Code Annotated, 1953, 78-51-12 et seq.
[4] Utah Code Annotated, 1953, 78-51-19.
[1] In re Swan's Estate, 4 Utah 2d 277, 283, 293 P.2d 682, 686.
[2] See 43 Words and Phrases, Undue Influence, pp. 154 to 160 under heading Gratitude, Affection, Kindness etc.; Sears v. Vaughan, 230 Ill. 572, 589, 82 N.E. 881, 887; Mackall v. Mackall, 135 U.S. 167, 10 S.Ct. 705, 707, 34 L.Ed. 84; Seals v. Seals, 213 Ky. 779, 783, 281 S.W. 982, 984; Luebbert v. Brockmeyer, 158 Mo. App. 196, 200, 208, 138 S.W. 92, 93, 96; Ethridge v. Bennett, 9 Houst., Del., 295, 300, 31 A. 813, 815.
[3] In re Evans & Rogers, 1900, 22 Utah 366, 387, 62 P. 913, 919, 53 L.R.A. 952, 83 Am.St.Rep. 794, same case, In re Evans, 42 Utah 282, 130 P. 217; In re Hanson, 1916, 48 Utah 163, 167, 158 P. 778, 779; In re McCullough, 97 Utah 533, 536, 537, 95 P.2d 13, 14, 15.
[4] See cases cited in Note 3 supra; also in In re Reily, 75 Okl. 192, 183 P. 728, 7 A.L.R. 89, and annotation on Presumption of Innocence in Disbarment Proceedings, at page 93. See also In re Little, 40 Wash.2d 421, 244 P.2d 255; In re Oliver, 97 Utah 1, 89 P.2d 229; In re Spencer, 206 App.Div. 806, 201 N.Y.S. 315; In re Haymond, 121 Cal. 385, 53 P. 899; Browne v. State Bar of California, 45 Cal.2d 165, 287 P.2d 745.
[5] In the Matter of Herr, 1956, 22 N.J. 276, 125 A.2d 706; In re Mangan, 1943, 113 Vt. 246, 32 A.2d 673.