[S. F. No. 21037. In Bank. Sept. 27, 1962.]

EDWARD HOWARD MAGEE, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Charles Reagh for Petitioner.

Garrett H. Elmore for Respondent.

THE COURT.—Petitioner challenges a finding by the Board of Bar Governors that he abused the confidence placed in him by an aged client, Mary Rohde, in drawing a will naming him the residuary beneficiary of her estate and in accepting a substantial cash gift from her. The board recommended that he be suspended from the practice of law for two years.*

The board's finding followed two hearings by a local administrative committee. The committee twice concluded that petitioner obtained the testamentary gift and the *inter vivos* gift

*Two members dissented on the ground that the penalty was too severe.

by undue influence, emphasizing that he had "gained an advantage over his client" and that he presented "no substantial evidence . . . to show that these transactions were fair and just." In its findings, the board does not mention undue influence, but states: "Respondent [petitioner] knew or reasonably should have known that [the gifts] were unnatural dispositions and that said acts of Mary Rohde were caused by her advanced age and impaired mental facilities. Respondent's acts and omissions in said transactions as herein found constituted an abuse of the confidence of his client. . . ." The board's findings will nevertheless be viewed in the light of the entire record, including the conclusion of the local committee that petitioner unduly influenced his client for his own benefit.

Petitioner was admitted to practice in 1930. He met Mrs. Rohde, who was a friend of his mother, at a meeting in 1941 of the Auxiliary of Miles Camp, Spanish American War Veterans. Between 1941 and 1949 petitioner had only brief conversations with Mrs. Rohde several times a year at functions of the veterans' organization. After the death of her husband in 1949, Mrs. Rohde consulted petitioner for assistance in applying for a government pension. He did not see Mrs. Rohde again until October 16, 1951, when the will was drawn.

Mrs. Rohde was then 81 years old, in declining health, and dependent upon friends and neighbors for assistance. There was testimony that she stated to those helping her that she would remember them in her will and that she stated in 1949 that she had made a holographic will that carried out a testamentary plan that she had agreed upon with her late husband.

Before consulting petitioner on October 16, 1951, Mrs. Rohde had arranged for the sale of her home. The deed was to be recorded on the day she came to his office, and the board found that "one purpose" of her visit was to discuss the sale. On this point there is a direct conflict in the evidence, for petitioner asserted that no mention was made to him of the home until some days later. John Moss, a real estate broker, testified, however, that he was certain that petitioner called him about the sale on the 16th. Regardless of the initial purpose of her visit, Mrs. Rohde on that date executed a formal will that made three $1,000 bequests to charities, left $500 to a neighbor, and left the residue of her estate to petitioner, who was also to serve as executor.

Petitioner's testimony is the only direct evidence of what

occurred during the 10 to 15 minutes he was alone with Mrs. Rohde in his office. He stated that they had a few moments of pleasant conversation and that she then told him how she wished to dispose of her estate. He took notes of her wishes, including her wish to make him the residuary legatee. He asked her why she wished to give him the residue, and she stated that she had no relatives, that he and his mother had been good to her, and that she was fond of him. He admitted that except for suggesting a gift to the neighbor who had driven Mrs. Rohde to his office, he did not ask about any other obligations she might have. He also testified that at the time he did not know the size of her estate, the residue of which was ultimately valued at $21,000.

Petitioner gave his notes to his secretary, who prepared a typewritten draft of the will. He then asked Mr. H. W. Ott, an office associate, to be a witness to the will, but Mr. Ott declined, stating that he was leaving for an appointment. Mr. Ott testified that he spoke with Mrs. Rohde shortly after the will was drawn and that she stated that she was in good health, that she had no relatives, and that she was leaving part of her estate to petitioner. She spoke rationally, appeared to understand what he said to her, and did not seem to be under any tension.

Petitioner then asked Mr. F. A. Devlin, a lawyer with offices nearby, to be a witness to the will. It is not clear whether petitioner told him of the residuary gift or whether Mr. Devlin discovered it himself. He thought that petitioner "might have" mentioned the fact. He testified: "I didn't think anything of . . . [the gift to petitioner].

"And then it suddenly struck me: that here was a will prepared in his office in which he was the beneficiary and, as it developed, to quite an extent.

"And I called a halt. And I asked him if he would object if I talked to Mrs. Rohde alone. He said 'No.' He stepped out and I talked to her."

Mrs. Rohde told Mr. Devlin that she had no living relatives anywhere. Then he read the will aloud to her asking her after each paragraph if that was her intention. She answered "yes" to every query. He asked her: " 'Well, why are you leaving your money to Mr. Magee? You're leaving a few thousand dollars, true, to a few specific legatees, but the bulk of your estate would go to Mr. Magee.' She says, 'Well, haven't I a right to do that?' She rather bristled at the moment.

"And I said, 'Yes, of course you have.' "

Mr. Devlin testified further that she seemed "entirely alert" and that "she knew exactly what she wanted to do." She was "one of these 'club women' type, you know, who is pretty definite in their ideas." At the end of this conversation Mr. Devlin thought that "it would be silly to simply retype the will" so "I adopted the will as mine; at least as mine in the sense that I had prepared it."

The will was executed, and petitioner placed a back on it bearing Mr. Devlin's name. It is not clear how the back was obtained from Mr. Devlin's office. The original of the will was given to Mrs. Rohde and the first carbon to Mr. Devlin. Petitioner retained a second carbon. After Mrs. Rohde's death in November 1952, petitioner attended a wake for her and on inquiry stated that an attorney "up the street" had drawn the will.

Petitioner saw Mrs. Rohde several times at her residence. The visits were short and concerned burial arrangements, other personal matters, and Mrs. Rohde's practice of keeping a large sum of cash in her room. On one occasion petitioner advised Mrs. Rohde to place the cash and other valuables in her safety deposit box at the bank. Shortly thereafter she met petitioner at the bank and placed several envelopes, presumably containing the cash and valuables, in the safety deposit box. She also instructed the bank to place petitioner's name on the box along with hers. According to petitioner this was not done at his suggestion but at hers to avoid her having to go to the bank to deposit and remove items. Several days later, however, she removed the contents of the box. There was testimony by a friend of Mrs. Rohde's who had expected to take under her will that Mrs. Rohde stated that she didn't like or trust petitioner.

Two months after she allegedly made this statement, Mrs. Rohde, at her residence, gave petitioner a wallet containing $4,500 in cash, stating, according to him, that she had enough to get along on, that it was his anyway, and that he might as well have it immediately. Petitioner's version of the gift was the only testimony presented on the matter. The next day he counted the money with his associate, Mr. Ott, informed him of the source of the money, and placed the cash in the office safe. Thereafter, petitioner treated the money as his own. He filed an amended inheritance tax return that included the sum given him.

A relative of Mrs. Rohde's deceased husband contested the will, and a jury determined that petitioner had exercised undue influence over her and that she was mentally incom-

petent. The trial judge held that the evidence of incompetence was insufficient to support the verdict, but sustained the verdict of undue influence, apparently in reliance on the presumption that arises from the attorney-client relationship. (See Civ. Code, § 2235; *Estate of Butts,* 201 Cal. 185, 188 [256 P. 200] ; *Estate of Corbett,* 123 Cal.App.2d 465, 470 [266 P.2d 935].) The decision was affirmed by the District Court of Appeal. (*Estate of Rohde,* 158 Cal.App.2d 19 [323 P.2d 490].)

An attorney who by undue influence obtains a gift from a client *inter vivos* or in a will is guilty of an act involving moral turpitude. (See Bus. & Prof. Code, § 6106; *Lantz* v. *State Bar,* 212 Cal. 213, 218-219 [298 P. 497] ; *In re Macfarlane,* 10 Utah 2d 217 [350 P.2d 631] ; *In re Herr,* 22 N.J. 276 [125 A.2d 706, 709, 711] ; *In re Vilkomerson,* 270 App.Div. 166 [58 N.Y.S.2d 922, 923] ; *In re Glover,* 176 Minn. 519 [223 N.W. 921].) In determining whether the evidence is sufficient to sustain the finding that petitioner exercised undue influence, however, we are not bound by the decision in the action setting aside Mrs. Rohde's will on this ground. (*In re Macfarlane, supra; People* v. *Howard,* 147 Colo. 501 [364 P.2d 380] ; *Tennessee Bar Assn.* v. *Berke,* 48 Tenn.App. 140 [344 S.W.2d 567, 571] ; *In re Santosuosso,* 318 Mass. 489 [62 N.E.2d 105, 107, 161 A.L.R. 892] ; *State* ex rel. *Nebraska State Bar Assn.* v. *Gudmundsen,* 145 Neb. 324 [16 N.W.2d 474, 476] ; *State* v. *Bomer,* 179 Tenn. 67 [162 S.W.2d 515, 520] ; *In re Gerlich,* 187 Minn. 88 [244 N.W. 414] ; cf. *Theard* v. *United States,* 354 U.S. 278, 282 [77 S.Ct. 1274, 1 L.Ed.2d 1342] [state disbarment not conclusive of fitness to remain a member of the federal bar] ; *Best* v. *State Bar,* 57 Cal.2d 633, 637 [21 Cal.Rptr. 589, 371 P.2d 325] [acquittal in criminal case no bar to disciplinary proceedings involving same facts] ; *Werner* v. *State Bar,* 24 Cal.2d 611 [150 P.2d 892].)

The highest good faith an attorney owes his client requires the attorney to rebut the inference of undue influence that arises when he receives a gift from the client under circumstances that reasonably suggest such influence. (See *Fleming* v. *State Bar,* 38 Cal.2d 341, 349 [239 P.2d 866] ; *Lantz* v. *State Bar, supra,* at p. 218 ; *In re Vilkomerson, supra;* cf. *Krieger* v. *State Bar,* 43 Cal.2d 604, 610 [275 P.2d 459] ; *Davis* v. *State Bar,* 20 Cal.2d 332, 338 [125 P.2d 467] ; *In re Herr, supra,* at p. 711; *Attorney General* v. *Lane,* 259 Mich. 283 [243 N.W. 6, 8] ; but see *In re Mangan,* 113 Vt. 246 [32 A.2d 673] ; *In re Spencer,* 206 App.Div. 806 [201 N.Y.S. 315, 322-323].) Although the circumstances of the instant

case gave rise to a presumption of undue influence, petitioner rebutted the presumption and raised reasonable doubts that he committed this offense. (See *Brawner* v. *State Bar*, 48 Cal.2d 814, 818 [313 P.2d 1].) Of utmost significance is the testimony of Mr. Devlin that he read the will to Mrs. Rohde paragraph by paragraph, questioned her about her intention, and explained to her the nature of the residuary gift. She stated that this was exactly what she wished to do, and she seemed to resent all the questioning. By this procedure, intended by Mr. Devlin to be a "taking over" of the will, Mrs. Rohde was in fact given much of the protection she would have received had petitioner sent her to another attorney when she first declared her intention to make him a beneficiary. There was no evidence that Mrs. Rohde was not fully competent on the morning in question. Indeed, all the evidence indicated that she appeared alert and in complete command of herself. The fact that she did not again make a will during the year preceding her death is some evidence that she was content with the will petitioner drew for her. Moreover, it seems unlikely that in the 10 to 15 minutes he was alone with Mrs. Rohde (a woman described variously as "tough," "firm," and "definite in . . . [her] ideas") petitioner could have persuaded her to discard a previous testamentary plan and make him the principal beneficiary of her estate.

If petitioner's version of the making of the will is accepted, the gift of cash was a normal and understandable act on Mrs. Rohde's part. We conclude, therefore, that the board did not prove by "convincing proof and to a reasonable certainty" that petitioner obtained either the testamentary or *inter vivos* gift by undue influence. (See *Black* v. *State Bar*, 57 Cal.2d 219, 225 [18 Cal.Rptr. 518, 368 P.2d 118] ; *Brawner* v. *State Bar, supra.*)

The ultimate finding by the board, however, recited that petitioner knew that the disposition in the will was "unnatural" and that it was motivated by Mrs. Rohde's "advanced age and impaired mental facilities." The same charge is made regarding the *inter vivos* gift. An attorney's duty of fidelity to his client involves far more than refraining from exercising undue influence. His fiduciary duty is "of the very highest character." (*Marsh* v. *State Bar*, 210 Cal. 303, 307 [291 P. 583].) For this reason all business dealings between attorney and client whereby the attorney benefits are closely scrutinized for any unfairness on the attorney's part. (See e.g., *Lady* v. *Worthingham*, 57 Cal.App.2d

557 [135 P.2d 205] ; *Creller* v. *Baer,* 354 Mich. 408 [93 N.W.2d 259, 261].) ██ In civil cases, ''there are no transactions respecting which courts . . . are more jealous and particular, than dealings between attorneys and their clients, especially where there is great intellectual inequality, and comparative inexperience on the part of the latter.'' (*Mills* v. *Mills,* 26 Conn. 213, 219.)

The danger of a lawyer's advancing his self-interest at a client's expense is recognized by the profession generally and is reflected in the American Bar Association's Canons of Professional Ethics. Canon 11 states: ''The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.'' In interpreting this canon, the Ethics Committee of the American Bar Association has stated: ''In cases where the testator desires to name the lawyer as executor or trustee or to leave him a legacy, the lawyer should consider having the testator submit the will to another lawyer prior to its execution.'' (Decision No. 266, in American Bar Association, Opinions of the Committee on Professional Ethics and Grievances, 641; see Orkin, Legal Ethics 104; Drinker, Legal Ethics 94.) Since the client is entitled to disinterested advice, an attorney should not place himself in a position where his self-interest might prevent his giving that advice.

██ For the very reason that the boundary between ethical and unethical behavior in such cases is not clearly defined, attorneys should avoid drawing wills containing gifts to themselves under circumstances in which there is a reasonable basis for suspicion that the client was overreached or that the gift would prevent the attorney from acting in the client's best interests. Such a practice would remove any temptation to deal unfairly and would protect the reputation of the profession. ██ When an attorney does draw a will under circumstances that suggest that he took advantage of a client's weakness or that he benefited unduly he must justify his action as he must when an inference of undue influence arises.

██ The board showed Mrs. Rohde's advanced age, introduced evidence of her deteriorating health, showed that her relationship with petitioner was not close, and pointed out that the residuary gift constituted the bulk of her estate. Petitioner, however, made an affirmative showing that tends to justify his actions, and we are of the opinion that the board failed to sustain its ultimate burden of proof. The board

sought to show that petitioner accepted an ''unnatural'' disposition that he knew or should have known was motivated by ''his client's advanced age and impaired mental facilities.'' If the board correctly assessed the facts, such conduct would constitute an abuse of the attorney-client relationship warranting disciplinary action. It is true that Mrs. Rohde's doctor testified that ''she was deteriorating mentally and physically rather rapidly'' and that her ability to concentrate and reason was ''very limited.'' He treated her for ''senile changes'' and hardening of the arteries. When asked specifically about her susceptibility to influence, however, he stated, ''Well, I don't think she took advice very good to be truthful with you. She was a pretty tough character, a tough old German lady. . . .'' A friend of Mrs. Rohde's agreed on cross-examination that Mrs. Rohde had ''always been a firm, dominating woman.'' Perhaps most significant insofar as the moral character of petitioner's actions are concerned is the fact that the two other lawyers Mrs. Rohde talked to on the morning the will was executed found her entirely rational and with full knowledge of what she intended to do. Mr. Devlin stated that she was ''entirely alert'' and ''definite in her ideas.'' Mr. Ott confirmed these observations. The only evidence of a defective mental condition was contained in the ambiguous remarks of her doctor quoted above. In the action to set aside the will, the evidence of incompetence in a transcript filling five volumes was apparently so meagre that the trial court set aside the jury verdict on that issue. We cannot say, therefore, that Mrs. Rohde's gift was caused by ''impaired mental capacity.'' Although her advanced age is a ground for requiring petitioner to justify the gift, it is not in itself a sufficient basis for assuming that he abused the confidence of his client. Even if it be assumed that Mrs. Rohde's mental capacities were impaired, her age alone would not necessarily convey that fact to petitioner, when, according to his testimony and that of Mr. Ott and Mr. Devlin, she appeared to be in full possession of her faculties.

 The term ''unnatural'' is normally used to describe a provision in a will in which a stranger receives a substantial gift and a member of the testator's immediate family is omitted from the will. (See e.g., *Estate of Finkler,* 3 Cal.2d 584, 597 [46 P.2d 149]; Page, The Law of Wills, § 29.108 at p. 639.) Since Mrs. Rohde had no relatives, the gift to petitioner was not ''unnatural'' in the legal sense of the term. It is true that she had friends whom she had known longer and

better than she knew petitioner. In this sense the gift to him was surprising and was another suspicious circumstance that petitioner was called upon to justify. He pointed out that Mrs. Rohde was friendly with his mother, though to what extent is uncertain. He had had some social contact with Mrs. Rohde through the Spanish American War Veterans organization. Mrs. Rohde, moreover, had made *inter vivos* gifts to a number of friends, and it is entirely possible that she considered these gifts adequate.

There is no rule that attorneys should never draw wills in which they receive gifts. There is nothing improper in an attorney's drawing wills for his family or for relatives, provided the gift to him is reasonable under the circumstances. Similarly, there is nothing improper in drawing wills for close friends or for clients if the gift to the attorney is a modest one. (See Orkin, Legal Ethics, *op. cit. supra*, at p. 94.) As the instant case suggests, however, attorneys take a grave risk in drawing wills in which they receive more than a modest gift that is in keeping with the nature of the relationship they have with the client. Petitioner took this risk, unwisely, and one consequence was that he lost the substantial gift in Mrs. Rohde's will when it was contested. Even though an attorney may be acting only to carry out the wishes of his client in drawing a will containing a gift to himself, he should send the client to another lawyer when the circumstances would support an inference of wrongdoing. In the instant case, petitioner should have taken the initiative in having Mrs. Rohde consult another lawyer. Since, however, the purpose of such consultation was adequately served by Mr. Devlin, although on his own initiative, and since there is no convincing proof of petitioner's wrongdoing, we have concluded that his conduct does not call for discipline or reprimand.

The proceeding is dismissed.