[Civ. No. 15729. First Dist., Div. One.   Feb. 25, 1954.]

Estate of JOSEPHINE B. CORBETT, Deceased.   MASIE NOONAN, Respondent, v. JAMES J. SCHUBAL et al., Appellants.

G. H. Van Harvey and Paul C. Thorne for Appellants.

Bagshaw, Schaal & Martinelli and A. E. Bagshaw for Respondent.

BRAY, J.—Petitioner James J. Schubal appeals from an order denying admission to probate of a document purporting to be the last will of Josephine B. Corbett, deceased, and denying his petition for letters testamentary.

The sole question presented is the sufficiency of the evidence to support the court's findings of undue influence and mental unsoundness.

## FACTS

On April 4, 1951, Josephine B. Corbett, a widow, aged about 67 years, signed the will in question. She died July 28th. Surviving her were three brothers and a sister, all living in Australia. Petitioner is an attorney and had been acting as her attorney since 1946. He was also her friend and business advisor. Her property consisted of her home, apparently worth between $10,000 and $12,000, $875 in United States bonds, $1,095 in cash, and jewelry and furniture. Petitioner had drawn two previous wills for her. The first one, in November, 1950, provided $500 bequests to three of her friends. It had no residuary clause and was never executed. Petitioner testified that she wanted to complete it later by codicil. About January, 1951, she instructed petitioner to draw a new will leaving everything to the Red Cross, and appointing petitioner executor. He thereupon tore up the first will. This second will she destroyed when the will in question here was executed. Petitioner destroyed his copies of both former wills. She went to the hospital for a short

period.  Petitioner visited her there and she told him she wanted to make a new will, to complete the first will she had started.  She said she wanted to remember Mrs. Harrs, Mrs. Sward and Constance Diernesse.  On her return from the hospital petitioner offered to buy her home from her at whatever price appraisers might fix and to let her live there the rest of her life.  He did that to get her to go to Australia to live with her sister.  After she returned home she said she wanted to complete her will.  Petitioner desired that she put in writing what she wanted so that he could feel sure what he was doing.  She gave him a list which included the three persons above mentioned, him and his wife.  He told her she did not need to put either his or his wife's name in the will.  She said she wanted it that way.  From the list she gave him, petitioner had typed a form of "Codicil To My Last Will and Testament."  Under "San Anselmo, California" a blank line was typed, evidently for a date.  It then stated: "It is my wish that the people whose names appear below receive the item, or article appearing opposite their name."  Below this on typewritten blank lines petitioner wrote in the names of the three friends of Mrs. Corbett above mentioned, his wife's name, and the addresses of each, followed by the figure $500.  Then appears "Residue to J. J. Schubal" and "Change of codicil later."  Under the typewritten blank line in the normal signature position, was typed "Josephine B. Corbett" and in petitioner's handwriting "A.K.A. Jose Corbett."  In spite of the obvious inference to be drawn from the instrument itself, petitioner testified he did not intend Mrs. Corbett to sign it, nor did she.  His explanation was: "Well, now, I will tell you.  Mrs. Corbett had intended to prepare a codicil—see?  And I told her that in the event we never completed it, she could copy this form, just this way, and put out what she wanted and give it to me and I would put it with the will.  That was merely directions for Mrs. Corbett."  He then stated that the list he had received from her was directions for the will, and this was for a codicil to the will.  Yet both instruments and the will as drawn contained exactly the same disposition of her estate.  Petitioner stated that he explained to her that "Residue to J. J. Schubal" meant that whatever was left would come to him.  She then said, "That's all right, we will leave it that way, and I will make some changes later."  Petitioner explained that "The reason that the will was executed to the extent it was—the reason that the codicil was to follow later,

was the fact that she intended additional bequests to be made later." He did not tell her what would be left to him nor what would be done to her home on her death. He did suggest that she get another attorney to prepare the will, but she stated that he was her attorney and she wanted him to do it. He asked her if she wanted to mention her parents or any relative. She said she did not. He asked her if she wanted to remember her sister in Australia (the one to whom he desired to send her if she would sell her property). She said she did not. He did not ask her who her other relatives were. Although he saved the "codicil" above mentioned, he destroyed the list in her handwriting.

Mrs. Harrs, one of the legatees in the will, testified that about two months after the date of the will Mrs. Corbett spoke to her about having drawn a will "a few days ago," stating, "She said that she had prepared a new will not very long ago, and she said, 'Remember, I had left everything to the Red Cross, and Mr. Schubal suggested that it would be nice to remember my close friends and relatives.' " She then stated that in addition to leaving Mrs. Harris $500, she had left a similar sum to Mrs. Sward, Mrs. Schubal, Elsie Hiller, Mrs. Henneberry, and possibly someone else and had left the residue to the witness. Neither Elsie Hiller nor Mrs. Henneberry are mentioned in the will. This statement has some significance in view of a conversation had between the witness and petitioner, shortly after Mrs. Corbett's death and before the will was filed. He told the witness that Mrs. Corbett had made a new will, that her former will left all to the Red Cross, and that he suggested that she should remember "her friends and relatives." He said, "We made a new will. Who is Elsie Hiller?" He then told her that Mrs. Sward, Mrs. Schubal, Constance Diernesse and the witness were remembered. Petitioner denied having this conversation with the witness or ever having heard the name Elsie Hiller before.

The actual execution of the will took place at testatrix' home on April 4th. Petitioner testified he drew the will, left it with testatrix three or four days before that with instructions to look it over. Petitioner saw her daily and it was finally arranged that he would come to her house on the following day for the signing of the will. She was to get the witnesses. When he arrived at the appointed hour, one Holloway was present. Testatrix wanted a Mr. Kraehl as a witness. She phoned for him but could not get him. She then

called Mr. Selvage and petitioner said he knew a neighbor that he could get. Apparently Holloway left about this time. Just why he was not asked to witness the will does not appear. Petitioner went to the home of Mrs. Kaehler and asked her to come over.

Selvage testified that he thought Mrs. Kaehler signed first. Both Schubal and testatrix asked him to witness the will. The witness picked the will up to read it. Petitioner took it from him and told him it was not necessary for him to read it. Testatrix made no objection to the witness reading it. He testified that she did not state that she had read it nor did petitioner ask her if she wanted to, nor did she state that it was her last will and testament. She signed the will after Mrs. Kaehler and he had signed it.

Mrs. Kaehler testified that testatrix stated it was her will, asked her and Selvage to witness it, and that testatrix signed before the witnesses did. Petitioner was present at all times during the signing of the will. His version of its signing was similar to that of Mrs. Kaehler. He admitted telling Selvage not to read it but claimed he then asked testatrix if she wanted Selvage to read it and she said she did not. Mrs. Kaehler did not testify on this subject.

Dr. Nutting had treated testatrix for three or four years prior to her death. He had hospitalized her on two occasions, March 22d to April 5, 1950, and January 16th to February 8, 1951. She was suffering from cirrhosis of the liver. She was a sherry addict. She was subject to hemorrhages and her life expectancy was not over a year or two. On returning home from the hospital she started drinking again and vomited occasionally. She was having difficulty seeing. She was flighty. She varied from time to time in her lucidity. Her judgment was poor. At times she did not know the witness. She did not have sound judgment. Petitioner testified he knew she was not a well woman and drank to some extent, although not excessively.

The contest is by testatrix' sister. The court found that testatrix was not capable of making a will and that it was obtained by the undue influence of petitioner, her attorney.

## Undue Influence

"There can be no doubt that under section 2235 of the Civil Code there is a rebuttable presumption of undue influence and insufficient consideration in transactions involving

a trustee and beneficiary, and that this section includes the relationship of attorney and client. . . . '. . . But if he does deal with him in such a manner as to obtain an advantage, the trustee has the burden of showing by evidence that the transaction was fair. [Citing cases.]' (See, also, *Moore* v. *Hoar*, 27 Cal.App.2d 269, 288 [81 P.2d 226].) . . .

"Another good case discussing the problem is *Estate of Phillipi*, 76 Cal.App.2d 100, 102 [172 P.2d 377], where the court stated: 'That Mr. Wilson was the attorney of the testator and that a confidential relationship existed between them is not questioned. Where such a situation exists the rebuttable presumption of fraud or undue influence arises where the attorney profits from his dealings with his client. That presumption can only be overcome by clear and satisfactory evidence that the transaction between the attorney and his client was fair and equitable and that the attorney had taken no advantage of the relationship and that the client was fully informed as to all matters relative to the transaction.' (See, also, *Estate* of *Witt*, 198 Cal. 407 [245 P. 197].)" (*McDonald* v. *Hewlett*, 102 Cal.App.2d 680, 686-687 [228 P.2d 83].)

█ It is obvious from petitioner's own testimony that he has not made a clear showing that the transaction was fair and that he had taken no advantage of his relationship with testatrix. The fact of the destruction of the writing which he claims she gave him, the peculiar "codicil" which he made out and to which he added "Change of codicil later," the will containing the identical provisions of the "codicil," the fact that he made no suggestion to her that she consider her relatives, his failure to insist that she obtain independent advice, his refusal to let her neighbor Selvage see the contents of the will, the fact that he and his wife are willed all of her estate but $1,500, the ill condition of testatrix, the fact that during the execution of the will he remained in the room and directed all the proceedings,—all are circumstances which add weight to the presumption. █ An attorney dealing with his client to his own advantage by getting practically her whole estate, must, at least, show that he reminded her of the natural objects of her bounty so that she could freely choose between them and him. Such reminder must be more than the casual reference to them which his testimony shows he made.

█ It is true that the burden was on the contestant to prove undue influence by a preponderance of the evidence, and that the proponent does not have to overcome the presumption or other prima facie showing of such undue influence

by a preponderance of the evidence (*Estate of Eakle,* 33 Cal. App.2d 379 [91 P.2d 954]). ▪ The circumstances here, while they might have supported a finding of no such influence, amply support the finding of undue influence. ▪ It is normally for the trial court to determine whether proponent's evidence outweighs the presumption or prima facie showing. As said in *McDonald* v. *Hewlett, supra,* 102 Cal.App.2d 680, 688 : ''Obviously, where the trial court reasonably does not believe the rebutting testimony the presumption is unimpaired.''

A significant fact bearing upon the credibility of the petitioner is that in his petition for probate of the will, he completely omitted the names and addresses of the sister or brothers. He definitely knew of the existence and address of the sister, and having access to all of testatrix' papers and letters probably knew of the addresses of the brothers. At least, he did not claim that he did not. His explanation was that while he knew as an attorney that the names and addresses of all heirs of the testatrix were supposed to be included in such a petition he did not consider them heirs as they were not mentioned in the will.

As we have determined that the evidence amply supports the court's findings of undue influence, it becomes unimportant whether the finding of mental incompetency is supported or not. For that reason we have not included the additional evidence on that issue, nor do we deem it necessary to discuss it.

The order is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 21, 1954.