[Civ. No. 26324. First Dist., Div. Four. Mar. 19, 1970.]

CARL W. REBMANN, a Conservatee, etc.,
Plaintiff, Cross-defendant and Respondent, v.
HUGH GEOFFREY MAJOR, a Minor, etc., et al.,
Defendants, Cross-complainants and Appellants.

**COUNSEL**

Chickering & Gregory, William L. Ferdon, John F. Denvir and Walter W. Mollison for Defendants, Cross-complainants and Appellants.

Brobeck, Phleger & Harrison and Charles E. Hanger for Plaintiff, Cross-defendant and Respondent.

## OPINION

**CHRISTIAN, J.**—Hugh and Maritza Major, minors represented by their mother Patricia Carson Major, as guardian, appeal from a judgment in favor of Carl Rebmann, who brought this action through Elsie R. Jonck, conservator. The judgment quiets respondent's title in two parcels of real property[1] as against a commonly shared half interest claimed by appellants under a deed from Maritza Rebmann, the deceased wife of respondent.

The first parcel in question is located at 1349 Montgomery Street, San Francisco, and is the location of The Shadows Restaurant; the second, adjoining the first at 305 Filbert Street, is the Rebmann family residence. Carl Rebmann originally acquired both properties by gift from his father in 1928. The residence had been transferred to Mr. Rebmann's first wife upon their divorce; she died in 1959 and title thereupon returned to him by devise. Carl Rebmann married his second wife, Maritza, in 1948. Though Carl and Maritza were divorced in 1956, they subsequently re-married and lived together until Maritza's death in 1965. In October of 1958, Carl Rebmann suffered a stroke which caused partial physical disability. Thereafter he entrusted more of his business affairs to his wife. His condition deteriorated, and a conservator was appointed in 1965.

In 1959 difficulties with the city health department necessitated structural alterations of the restaurant building. Before permitting the alterations, the city building department required that Maritza be bound by certain restrictions limiting the commercial use of the property. In furtherance of these arrangements, Carl executed a deed, on November 19, 1959, transferring the restaurant property to Maritza and himself as joint tenants.

On September 15, 1960, Carl executed a deed transferring the residence property to himself and Maritza as joint tenants. Carl and his friend, George Cusick, both testified that Maritza had threatened to leave Carl unless he made the transfer. By then Carl had suffered a series of strokes which made it appear likely that he would predecease Maritza.

There was testimony by the attorney who prepared the 1960 deed that Mr. and Mrs. Rebmann, prior to the execution of the joint tenancy deed to the residence property, orally agreed between themselves that there would be no transfer of the property but that it would go to the survivor. There was no evidence of such an agreement as to the restaurant property.

Mrs. Major is an attorney. Before her marriage to Dr. Major, she

---

[1]Appellants' briefs make no attack on the judgment insofar as it determines that respondent is the owner of an undivided one-half interest in 100 shares of stock of the El Dorado State Bank.

moved next door to the Rebmanns and became friendly with them. The Majors' daughter, appellant herein, was named after Mrs. Rebmann, who was godmother to both children. Dr. Major sometimes attended Mrs. Rebmann as her personal physician.

In August of 1961, Dr. Major discovered that Mrs. Rebmann was suffering from cancer, and shortly thereafter performed major surgery upon her. Mrs. Major testified that Mrs. Rebmann, after release from the hospital in September of 1961, declared that she wanted the Major children to have her interest in the residence and restaurant properties. Mrs. Major further testified that she informed Mrs. Rebmann that the joint tenancies could be severed by deeding the properties to the children, and that upon suggesting that another attorney should handle the transfer, Mrs. Rebmann specifically requested that Mrs. Major prepare deeds to effect the transfer. Mrs. Rebmann executed such deeds in the presence of Mrs. Major. According to Mrs. Major's testimony, Mrs. Rebmann then handed the deeds to Mrs. Major, saying that they were for the children, that she should keep them in a safe place, and that she was sorry that the children could not receive the income from the property until her death, but that she and her husband would have need of the money until that time. The deeds were not recorded by Mrs. Major until the day before Mrs. Rebmann's death some four years later. During that period, Mrs. Major apparently kept the existence of these deeds a secret from all involved, including her children, her husband, and Mr. Rebmann.

Appellants make several contentions attacking the sufficiency of the evidence and the propriety of the court's findings on various alternative or subsidiary issues. ▮ We shall consider only the court's determination that the deeds from Maritza Rebmann to the children were induced by "the undue influence of defendant Patricia Carson Major, . . ." If that finding is supported by substantial evidence, it renders ineffective all the other contentions advanced by appellants.

When Mrs. Major gave advice to Mrs. Rebmann concerning the severance of the joint tenancies, Mrs. Major was already aware, through her husband, of Mrs. Rebmann's dangerous illness. Indeed the first discussions regarding the proposed deeds took place "[i]n the waiting room outside the cobalt treatment room at U.C. Hospital." As a result of these discussions, Mrs. Major obtained, without consideration, gift deeds purporting to convey valuable property to her minor children. The deeds were acknowledged and could have been recorded; yet recordation was withheld, and the existence of the deeds was not disclosed, until Mrs. Rebmann was moribund. These circumstances alone support the court's finding of undue influence. We recognize that there was substantial contrary evidence; but it was the function of the trial court to resolve evidentiary conflicts.

The finding of undue influence is also supported by the court's explicit determination that the statutory presumption of undue influence (Civ. Code, § 2235)[2] was not dispelled. ■ Appellants contend that this presumption is properly considered a presumption affecting only the burden of producing evidence, so that once Mrs. Major testified to the relevant circumstances, the presumption was dispelled and the trial judge was in error in finding on the basis of that presumption. But Civil Code section 2235 has often been treated as a presumption affecting the burden of proof. (*Trafton* v. *Youngblood* (1968) 69 Cal.2d 17, 28 [69 Cal.Rptr. 568, 442 P.2d 648]; see *Stevens* v. *Marco* (1956) 147 Cal.App.2d 357 [305 P.2d 669]; *McDonald* v. *Hewlett* (1951) 102 Cal.App.2d 680 [228 P.2d 83, 24 A.L.R.2d 1281].) Appellants contend that under Evidence Code section 605 the presumption of undue influence is no longer one affecting the burden of proof. On the contrary, the presumption is designed to implement the public policy in favor of "the security of those who entrust themselves or their property to the administration of others." By the quoted language Evidence Code section 605 continues in effect the rule that the presumption of undue influence shifts the burden of proof. It is true that the effect of the presumption was simply to impose on appellants "the burden of proof as to the nonexistence of the presumed [undue influence]" (Evid. Code, § 606). It was for the trial judge to determine whether the evidence offered by appellants showed, by a preponderance of the evidence, that there was no undue influence.

■ Appellants also contend that Civil Code section 2235 does not apply because the purported conveyances from Mrs. Rebmann went not to Mrs. Major, the attorney, but to appellants who are the attorney's minor children. This contention is answered by the language of section 2235, referring to the fiduciary obtaining "any advantage from his beneficiary." It is an "advantage" to a parent responsible for the maintenance and education of children for the children to receive valuable property which may be applied to those purposes.

### Motion to Augment

■ During the trial, the court received in evidence without objection a letter, addressed to Mrs. Rebmann, from which the letterhead and signature had been removed. The letter, apparently from a lawyer, con-

---

[2]Civil Code, section 2235. "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence. The presumptions established by this section do not apply to the provisions of an agreement between a trustee and his beneficiary relating to the hiring or compensation of the trustee." Respondent correctly points out that this presumption has been applied to lawyer-client relations since 1891. (*Felton* v. *Le Breton* (1891) 92 Cal. 457 [28 P. 490]; see also *Thompson* v. *Price* (1967) 251 Cal.App.2d 182, 188 [59 Cal. Rptr. 174].)

tained detailed advice on how the joint tenancy to the two properties could be severed by Mrs. Rebmann. Mrs. Major denied any knowledge of these letters; it may reasonably be inferred that the mystery regarding the authorship of the letter damaged Mrs. Major's credit as a witness. Appellants have moved to augment the record on appeal, or produce new evidence, in order to show that the letter was written not by Mrs. Major but by attorney Jeffers, a long-time friend of the Rebmann family. The proffered evidence would have been material at trial as tending to rehabilitate Mrs. Major, whose testimony that she did not send the letter was otherwise unsupported. But Mrs. Major's own testimony was that she first saw the letter at the taking of a deposition "within the last year"; there is no adequate showing of why the matter was not immediately investigated and put before the trial court. In a declaration supporting the motion it is asserted that at a hearing on June 14, 1968, the trial judge remarked that he believed the letter was written by Mrs. Major. Judgment was not entered until July 23; appellants offer no explanation for the failure to begin inquiries on June 14 when there would have been ample time to present the new information as grounds for a new trial motion. Such inquiries would apparently not have needed to be specially widespread; Mrs. Major's declaration relates that the apparent author of the letter is the godfather of her own children. Moreover, reception of the letter could not affect the outcome of this appeal. Therefore the situation does not call for us to take evidence. (3 Witkin, Cal. Procedure, Appeal (1954), § 198, p. 2398.)

The motion to augment record and for leave to produce evidence is denied. The judgment is affirmed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied April 17, 1970, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied May 15, 1970.