[No. A026068. First Dist., Div. Four. Jan. 29, 1986.]

DONNA BALL, as Administratrix With the Will Annexed, etc.,
Plaintiff and Respondent, v.
DAN T. POSEY, Defendant and Appellant.

**COUNSEL**

Dan T. Posey, in pro. per., and Robert N. Beechinor for Defendant and Appellant.

Bernadine Bushman Guidotti for Plaintiff and Respondent.

**OPINION**

**CHANNELL, J.—█ █** Dan T. Posey, a California attorney, appeals from judgments[1] against him for conversion, breach of fiduciary duty and fraudulent disposition of a client's property. He contends that: (1) the jury was improperly instructed on the presumption of undue influence; and (2) the plaintiff failed to sustain her burden of proof as to damages. Neither claim is meritorious, and consequently we affirm the judgments.

## I. FACTS

Respondent, Donna Ball,[2] is the administratrix with the will annexed of the estate of Jeannette Watkins Ball (hereafter Mrs. Ball).

Mrs. Ball was an elderly woman in poor health. She suffered from a number of ailments for which she had been hospitalized at least 11 times in the last five years of her life. She took pain medication several times daily, occasionally combining it with alcohol.

In 1975 and again in 1978, Arthur and Jeannette Ball had Posey prepare their reciprocal wills. Shortly after Arthur died in 1979, Mrs. Ball hired Posey to settle Arthur's estate. That estate consisted solely of community property, principally cash and securities, all held in joint tenancy with Mrs. Ball. Posey performed a number of routine tasks to terminate the joint tenancies.[3] Mrs. Ball paid $6,620 for these services, though Posey claims he gave her a bill for only $2,500. A jury found these services worth no more

---

[1]The trial court entered a judgment based on the jury's verdict, and subsequently entered a second judgment awarding prejudgment interest. Though appellant purports to appeal from both judgments, he does not raise the interest award issue, and he therefore waives it. (Code Civ. Proc., § 906.)

[2]Donna Ball is the daughter-in-law of decedent, Mrs. Ball. She is also the widow of Donald Ball, who was the son of Mrs. Ball and her husband, Arthur Cameron Ball.

[3]Posey also prepared a United States Estate Tax Return (Form 706) for Mrs. Ball's signature. However, this was unnecessary because Arthur's total gross estate was below the minimum to require such a return.

than $1,135. (See fn. 4, *post.*) This was but one in a series of transactions, the most egregious of which are described below, that amounted to undue influence on Mr. Posey's part.

1. In January 1980, Mrs. Ball signed a power of attorney, prepared by Posey, appointing him as her attorney in fact.

2. On March 4, 1980, Posey had Mrs. Ball send a letter, addressed to the manager of the apartment building, advising that he, Posey, should have access to her apartment in the event of her incapacity. She countersigned the letter. (Six months later Posey was careful to draw up, and have Mrs. Ball sign, a similar letter to the manager of the hotel that was then her residence.)

3. On the same day Posey presented her with the first letter to her landlord, he provided Mrs. Ball with a new will that named himself as executor. This, too, she signed.

4. Still the same day, March 4, 1980, documents were deposited with Mrs. Ball's bank naming Posey as the joint tenant on both her checking and savings accounts. They were signed by both Posey and Mrs. Ball.

5. In November, Mrs. Ball inherited $1,125. She endorsed the check she received and gave it to Mr. Posey to cash for her. Instead of giving her the proceeds, Posey bought a cashier's check payable to a third party.

6. On December 26, 1980, the day Mrs. Ball died, Posey improperly obtained from the county treasurer's office in San Francisco a consent to transfer all the money in Mrs. Ball's accounts to himself. On January 5, 1981, Posey withdrew all the money, over $37,000, from those accounts.

Between the day Mrs. Ball died and the day Posey emptied all her accounts Posey had the apartment sealed, and refused access to Donna Ball and her children. This was despite Donna Ball's warning that maintaining the apartment would result in another month's rent being charged.

At trial, the jury awarded $43,746.73[4] compensatory damages on three causes of action: (1) for recovery of the $37,136.73 in Mrs. Ball's bank accounts; (2) for the proceeds of the $1,125 inheritance check; and (3) for the return of excessive fees charged in the amount of $5,620. The jury also awarded $40,000 punitive damages.

---

[4]Full recovery on these three causes of action would have been $135 more than the verdict. It may be that out of the $6,620 paid for fees, the jury was requiring Posey to return slightly less than the $5,620 sought in the complaint. The record on this matter is not clear.

## II. Presumptions of Undue Influence

■ Posey contends that the jury was improperly instructed that there was a presumption of undue influence. He argues that since he never entered into a contract, joint venture, or agreement with Mrs. Ball, any such presumption was incorrectly applied to his relationship with her. The cases, including those Posey cites, do not support this view.

■ First of all, Posey was Mrs. Ball's attorney. This alone creates a fiduciary relationship that should be of the highest character. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 188-189 [98 Cal.Rptr. 837, 491 P.2d 421].) ■ Further, at the time of all the transactions that form the basis of this case, Posey was Mrs. Ball's agent by reason of the signed power of attorney, as well as the fact that he was the named executor of her will.

■ When a fiduciary gains an advantage, a *presumption* of undue influence arises. (*Bradner* v. *Vasquez* (1954) 43 Cal.2d 147, 151 [272 P.2d 11].) ■ "To declare that the advantage obtained must be shown to be unfair, unjust, or inequitable before the presumptions arise would result in the imposition of a condition which is not required by [Civil Code] section 2235."[5] (*Id.*, at p. 152.)

■ Posey cites *Gold* v. *Greenwald* (1966) 247 Cal.App.2d 296 [55 Cal.Rptr. 660], in support of his argument. However, that case stands for the proposition that a presumption of undue influence applies to all dealings between an attorney and a client for the attorney's benefit.

At trial, Posey admitted that he had never advised Mrs. Ball to obtain separate counsel when his name appeared as the joint tenant on her bank accounts. ■ However, "[t]he duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests." (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at pp. 188-189.) Even the lack of full disclosure will amount to fraud, because the fiduciary's obligation is affirmative. ■ The attorney must demonstrate that the client was fully informed on all matters related to any transactions between them. (*Id.*, at p. 189; see also *Gold* v. *Greenwald, supra,* 247 Cal.App.2d at p. 306.) Posey has failed to do this.

---

[5]Civil Code section 2235 reads in pertinent part: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence."

### III. COMPENSATORY DAMAGES

■ Posey next contends that the jurors were not qualified to determine the value of the legal services he performed for Mrs. Ball.

Posey claimed that he gave Mrs. Ball a bill for $2,500, but he produced no evidence of this at trial. Posey never explained why Mrs. Ball paid $4,120 more than the amount of his bill. Furthermore, Posey's calculation of his fee was based on the entire estate, not just that of Mrs. Ball's deceased husband. Posey even prepared and had Mrs. Ball sign unnecessary documents. (See fn. 3, *ante.*)

Expert testimony was not needed to determine the value of the few proper services Mr. Posey performed. All the facts were before the jury, and it generously allowed him to keep over $1,000. (See fn. 4, *ante.*) "The correct rule on the necessity of expert testimony has been summarized by Bob Dylan: 'You don't need a weatherman to know which way the wind blows.'[6] ■ The California courts, although in harmony, express the rule somewhat less colorfully and hold expert testimony is not required where a question is 'resolvable by common knowledge'. [Citations omitted.]" (*Jorgensen v. Beach 'N' Bay Realty, Inc.* (1981) 125 Cal.App.3d 155, 163 [177 Cal.Rptr. 882].)

More specifically, in *Bunn v. Lucas, Pino & Lucas* (1959) 172 Cal.App.2d 450 [342 P.2d 508], the court held that "[e]xpert testimony as to the reasonable value of attorney's legal services is unnecessary. [Citations.]" (*Id.,* at p. 468.) The trial court's findings of fact on this matter cannot be disturbed absent a clear abuse of discretion. ■ This award constituted no such abuse of discretion.

■ Posey also contends that the jury had insufficient evidence that he misappropriated the inheritance check. We are not convinced. The proceeds of the check were never deposited in either of Mrs. Ball's bank accounts. Posey failed to produce evidence, such as a receipt, to prove his claim that he returned the proceeds to Mrs. Ball in cash. Like the jury, we fail to see why he would have delivered over $1,000 in cash to an elderly client who was then in a convalescent hospital, with or without a receipt. In fact, on the same day Posey cashed the check, he purchased another one, of a slightly higher denomination, payable to an unrelated third party. We think there was more than sufficient evidence to support the jury's award.

---

[6] In a footnote at this point, the court cites: "Bob Dylan, 'Subterranean Homesick Blues' from *Bringing it All Back Home.*"

 Posey even argues that he should have been allowed credit for taxes paid on the money held in "joint tenancy." Other than his testimony, he had no evidence he made any tax payment, he cites no authority for this claim, and we find it wholly without merit.

## IV. PUNITIVE DAMAGES

 Finally, Posey contends that the $40,000 award of punitive damages is excessive. He cites *Rosener* v. *Sears, Roebuck & Co.* (1980) 110 Cal.App.3d 740 [168 Cal.Rptr. 237], for the principle that an award of punitive damages must bear some reasonable relationship to actual damages. In *Rosener,* the jury awarded $158,000 compensatory damages and $10 million in punitive damages. The court held that this amount reflected passion and prejudice and that $2.5 million was more appropriate. (*Id.,* at pp. 746, 749-750.) We think that, in light of Posey's behavior, the award both bore a reasonable relationship to the compensatory damages award, and reflected the jury's conservatism and restraint.

## V.

This court is outraged by the conduct of a member of the California State Bar, and astonished that he should have the temerity to appeal the judgments in this case. We have determined that the State Bar is appropriately investigating Posey for his conduct that necessitated this litigation. If this were not the case we would make such a recommendation.

The judgments are affirmed.

Anderson, P. J., and Sabraw, J., concurred.