[No. A063756. First Div., Div. Two. Nov. 22, 1994.]

Estate of KATHRYNE J. AUEN, Deceased.
NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC., et al., Contestants and Respondents, v.
PATRICIA A. CARSON, Claimant and Appellant.

NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC., et al., Plaintiffs and Respondents, v.
PATRICIA A. CARSON et al., Defendants and Appellants.

AMERICAN HEART ASSOCIATION, CALIFORNIA AFFILIATE, et al., Plaintiffs and Respondents, v.
PATRICIA A. CARSON et al., Defendants and Appellants.

**COUNSEL**

Evans, Latham, Harris & Campisi and Dominic J. Campisi for Claimant and Appellant and Defendants and Appellants.

Glenn P. Oleon, Cooley, Godward, Castro, Huddleson & Tatum, James A. Richman and James A. Thompson for Plaintiffs and Respondents and for Contestants and Respondents.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

This is an appeal from a judgment in a consolidated proceeding involving the estate of Kathryne J. Auen (Auen) who left most of her substantial estate to her attorney, Patricia A. Carson, also known as Patricia C. Major (Carson), and to Carson's family. The primary ruling at issue in this appeal is the trial court's finding that Carson exerted undue influence over Auen. We affirm this ruling and the judgment.

## II. The Parties and Procedural History

Auen died on August 30, 1990. A will executed by Auen and dated February 22, 1990 (the 1990 will) was admitted to probate on November 6, 1990.

Auen's next prior will, dated May 17, 1984 (the 1984 will) left most of her estate to four charities which were named as residuary devisees, the National Federation of the Blind of California, Inc. (the National Federation), the American Diabetes Association, California Affiliate, Inc. (the Diabetes Association), the American Heart Association, California Affiliate (the Heart Association), and the American Cancer Society, California Affiliate (the Cancer Society).[1]

A petition for revocation of probate of the 1990 will (the Petition) was filed by the National Federation on July 6, 1992. The Diabetes Association joined in the Petition on that same day. The Heart Association was granted leave to intervene in the revocation proceeding on January 22, 1993.

Two civil actions were also filed challenging not only the 1990 will but certain inter vivos transfers allegedly made from Auen to Carson and her husband, Robert A. Major (together, appellants). The first civil action was filed on July 15, 1992, by the National Federation and the Diabetes Association. The second action was filed by the Heart Association on September 18, 1992. The Cancer Society did not participate directly in the revocation proceeding but was granted leave to intervene in the Heart Association's civil action on May 3, 1993.

Irene Lawson (Lawson) is Auen's sister and a beneficiary under both the 1984 and 1990 wills. On July 13, 1992, Lawson joined in the revocation proceeding filed by the National Federation.

The three actions were consolidated for trial. At the conclusion of trial, the court found that Carson unduly influenced Auen. The court revoked Auen's 1990 will, canceled a grant deed from Auen to appellants conveying title to a piece of real property known as the "Women's Hotel," and ordered appellants to return funds withdrawn from Auen's bank accounts after Auen's death and all personal property in their possession which had belonged to Auen.

## III. Facts

Carson's professional relationship with Auen began on March 13, 1984, when she was appointed by the probate court to represent Auen in an action

---

[1]The four charities who were residuary devisees under the 1984 will are collectively referred to as the "Charities."

to set aside a conservatorship that was established when Auen became temporarily disabled from cancer. Carson met Auen before the actual appointment when she attended the funeral of Auen's husband.

During the conservatorship proceedings, Carson prepared and witnessed Auen's 1984 will. That will devised most of Auen's estate to the Charities, although under it Lawson was to receive a gift of $100,000 and an additional $100,000 in trust for medical and living expenses. Carson admitted at trial that the 1984 will accurately reflected Auen's testamentary intent at the time it was executed.

After termination of the conservatorship, Carson continued to act as Auen's attorney until Auen's death in August 1990. In addition to handling various legal matters for Auen,[2] Carson routinely signed documents on Auen's behalf, held powers of attorney on Auen's bank accounts and referred to herself orally and in writing as Auen's "attorney." Auen regularly referred to Carson as her attorney and, at all times, considered her as such. The trial court found, and appellants do not dispute, that Carson maintained a continuous attorney-client relationship with Auen through the entire period from March 1984 to Auen's death in August 1990.

Carson also developed a personal relationship with Auen. Auen was an overnight guest at Carson's home on several occasions and spent holidays with Carson's family. Carson also did errands for Auen, helped with her shopping, made social visits, and included Auen in family gatherings.

When Carson met Auen in 1984, Auen's most valuable asset, and her primary source of income, was the Women's Hotel, located in San Francisco, and valued in the 1984 conservatorship inventory at $1,110,000. The Women's Hotel had been leased to Vincent Kircher since 1968 and Auen was receiving $1,500 per month under the lease in 1985 when Kircher attempted to negotiate a renewal. Carson rejected Kircher's lease proposal and did not offer a counterproposal.

After Kircher's lease expired on September 30, 1986, Carson began operating the Women's Hotel for Auen under the name "Auen-Carson Properties." A joint account was opened under the name "Auen-Carson Properties;" it was maintained exclusively with Auen's personal funds. Auen never wrote a check on this account. Carson routinely wrote checks on the

---

[2]One example was the sale of Auen's home to a client, personal friend and business associate of Carson's. Carson was the only attorney involved in the transaction, a transaction handled without the benefit of a realtor. Carson did not provide a written disclosure of her relationship to either Auen or the buyer, nor did she obtain waivers from either party.

account and there was evidence in the record that she used the account to pay for personal obligations. Beginning in May 1987, Carson began paying herself $1,500 and then $2,000 a month from the account. In July 1990, a second joint account was opened and used in a similar fashion.

The nature and terms of Carson's arrangement with Auen with respect to the "Auen-Carson Properties" was not discernible from the evidence presented at trial. There is no writing of any kind memorializing this arrangement. Carson's own testimony on this issue was vague and inconsistent. Carson admits she did not obtain a written waiver from Auen or advise Auen to seek independent legal counsel regarding the arrangement.

In February 1990 Auen executed the 1990 will. The 1990 will left the Women's Hotel to Carson and her husband, created $10,000 trusts for each of Carson's grandchildren, made a specific bequest to Carson's housekeeper, and named Carson's children as residuary beneficiaries. Lawson was to receive a $100,000 trust for medical and living expenses. The will also left a $20,000 bequest to a favorite charity of Carson's. Nothing was left to the Charities named as the primary beneficiaries under the 1984 will.[3]

The 1990 will was drafted by Philip Siggins, a personal friend of Carson's, albeit an attorney with minimal experience in drafting wills. Siggins rented office space from and shared secretarial services with Carson. Siggins's discussions with Auen regarding the 1990 will were limited to three short telephone interviews. The trial court found this circumstance instructive because it was acknowledged that Auen was hard of hearing. Siggins admitted that he received much of his information suggesting what the specific terms of the 1990 will should be from Carson and Carson's secretary, Margaret Westgate. The trial court found that Siggins was not "an independent advisor" with respect to the preparation of the 1990 will.

Although Carson did not personally draft the 1990 will, there is evidence that she participated in its drafting, both in content and in form, and in the delivery of the will to Auen. There is also evidence that, prior to Siggins's involvement, Carson discussed the will provisions with Auen and added her own comments to Auen's handwritten notes, notes which were used by Siggins to draft the 1990 will. There is also evidence that Carson influenced Auen to omit the Charities and to make a bequest to a charity in which Carson was active.

Both the draft and final version of the 1990 will were typed by Carson's secretary, Westgate. The 1990 will named Carson as executor of Auen's

---

[3]Other bequests were made but are not discussed because they are not relevant to resolve the issues on appeal.

estate and Westgate as an alternate executor. Westgate and Siggins were witnesses to the execution of the 1990 will. Westgate ultimately served as executor of Auen's estate.

On August 21, 1990, nine days before Auen's death, Auen executed a deed transferring the Women's Hotel to Carson and her husband. The deed was prepared by Carson and notarized by a close friend of Carson's. Carson did not tell her husband she obtained this deed until after Auen's death. She recorded the deed on the first working day after Auen's death.

Carson testified that in August 1990 Auen gave appellants other gifts, including the jewelry and other belongings kept at Auen's apartment. Carson's husband testified that Auen made oral gifts of all her paintings to him. There was no writing or witness to support the contentions that Auen had given appellants these gifts. Nor did Carson tell anyone, including Westgate, her secretary and the executor of Auen's estate, about these gifts. There was no evidence that Auen delivered any of the alleged gifts to appellants. There was testimony that after Auen's death three pickup truck loads of Auen's personal property were taken from Auen's apartment and delivered to Carson.

## IV. DISCUSSION

### A. *Undue Influence*

Appellants' primary contention is that the trial court erred in finding that Carson unduly influenced Auen. Their argument is three-pronged. First, appellants contend that the trial court applied the wrong test for determining whether the presumption of undue influence applies. Second, they contend Carson did not "unduly benefit" from Auen's will. Finally, appellants argue that, if the presumption of undue influence was properly applied, appellants rebutted that presumption.

### 1. *The Presumption of Undue Influence*

■ Generally, the contestants of a will have the burden of proving undue influence. (Prob. Code, § 8252.) If a presumption of undue influence applies, however, the burden of proof shifts to the proponent to show the absence of undue influence. (*Estate of Sarabia* (1990) 221 Cal.App.3d 599, 605 [270 Cal.Rptr. 560]; *Estate of Gelonese* (1974) 36 Cal.App.3d 854, 863 [111 Cal.Rptr. 833].)

■ Appellants argue that the trial court applied the wrong test for determining when a presumption of undue influence arises. They contend the

court inappropriately applied the repealed provisions of former Civil Code section 2235 to raise a presumption of undue influence.[4] According to appellants, the correct test is stated in *Estate of Sarabia, supra,* 221 Cal.App.3d 599, as follows: "The presumption of undue influence arises only if *all* of the following elements are shown: (1) the existence of a confidential relationship between the testator and the person alleged to have exerted undue influence; (2) active participation by such person in the actual preparation or execution of the will, such conduct not being of a merely incidental nature; and (3) undue profit accruing to that person by virtue of the will." (*Id.* at p. 605.)

The trial court acknowledged the general test applicable to confidential relationships articulated in *Sarabia,* but adopted a different test, applicable to attorney-client relationships. The trial court held that the contestants could invoke the presumption of undue influence upon a showing that (1) an attorney-client relationship existed between Carson and Auen at the time the 1990 will was prepared and executed, (2) Carson actively participated in the preparation of the 1990 will, and (3) Carson benefited by the will. In other words, the trial court held that, when there is an attorney-client relationship, proof that the benefit to an attorney was "undue" is not required to trigger a presumption of undue influence.

The confidential relationship between the beneficiary and testator in *Sarabia* was a companionship and a friendship with no "legal" component to it. (*Estate of Sarabia, supra,* 221 Cal.App.3d at p. 599.) In contrast, the attorney-client relationship is a legal relationship both defined and delimited by law. (See *Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369, 382 [193 Cal.Rptr. 422].)

The relation between attorney and client is a fiduciary relation of the very highest character. (*Ball* v. *Posey* (1986) 176 Cal.App.3d 1209, 1214 [222

---

[4]Former Civil Code section 2235 provided: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence. The presumptions established by this section do not apply to the provisions of an agreement between a trustee and his beneficiary relating to the hiring or compensation of the trustee." (Civ. Code, § 2235 [repealed].)

Appellants contend that *Estate of Gump* (1991) 1 Cal.App.4th 582 [2 Cal.Rptr.2d 269], rejected the principles reflected in repealed Civil Code section 2235. *Estate of Gump* addressed the elements of a claim for fraud under repealed Civil Code section 2234; it did not discuss section 2235 or the law pertaining to undue influence and confidential relationships. (1 Cal.App.4th at pp. 599-604.)

The Legislature has expressly stated that the repeal of Civil Code section 2235 was not intended to "alter the rules applied by the courts to fiduciary and confidential relationships." (Prob. Code, § 15003, subd. (b).)

Cal.Rptr. 746].) Transactions between attorneys and their clients are subject to the strictest scrutiny. (See, e.g., *Magee* v. *State Bar* (1962) 58 Cal.2d 423, 430-431 [24 Cal.Rptr. 839, 374 P.2d 807]; *Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 146 [77 Cal.Rptr. 657, 454 P.2d 329].) These general principles applicable to the attorney-client relationship support the trial court's reasoning that, when an attorney is acting as an attorney, any benefit other than compensation for legal services performed would be "undue."

The trial court did not apply former Civil Code section 2235; it correctly observed that the principle embodied in that section, that proof of undue benefit is not required when the benefit is received by an attorney, has been applied by courts without reference to former section 2235. (See, e.g., *Estate of Phillipi* (1946) 76 Cal.App.2d 100, 102 [172 P.2d 377] [where the attorney-client relationship exists, "the rebuttable presumption of fraud or undue influence arises where the attorney profits from his dealings with his client"]; *Estate of Johnson* (1948) 85 Cal.App.2d 760, 764 [193 P.2d 782]. ["A presumption of undue influence arises from proof of the existence of a confidential relation between the testatrix and the beneficiary coupled with the activity on the part of the latter in the preparation of the will."]; *Estate of Lind* (1989) 209 Cal.App.3d 1424, 1430 [257 Cal.Rptr. 853] [recognizing that a bequest to an attorney who drafted the will "invites invocation of the evidentiary presumption of undue influence"]; see also *Estate of Morey* (1905) 147 Cal. 495, 508 [82 P. 57]; *Estate of Witt* (1926) 198 Cal. 407, 419 [245 P. 197]; *Estate of Butts* (1927) 201 Cal. 185, 188 [256 P. 200]; *Estate of Rohde* (1958) 158 Cal.App.2d 19, 23-24 [323 P.2d 490].)[5]

The trial court also drew support for this conclusion from section 16004, subdivision (c) of the Probate Code which provides in pertinent part: "A transaction between the trustee and a beneficiary which occurs during the existence of the trust or while the trustee's influence with the beneficiary remains and by which the trustee obtains an advantage from the beneficiary is presumed to be a violation of the trustee's fiduciary duties. This presumption is a presumption affecting the burden of proof." (Prob. Code, § 16004, subd. (c).)

Thus, former Civil Code section 2235, general case law involving attorney-client relationships, and Probate Code section 16004, subdivision (c) are

---

[5]Appellants contend that cases which do not require proof that a benefit to an attorney was undue are distinguishable because the attorneys involved in those cases drafted the challenged wills. Neither the language nor reasoning of the cases support a substantive distinction between active participation in preparing the will and physically drafting it. Further, appellants overlook *Estate of Johnson, supra,* 85 Cal.App.2d 760, wherein a codicil devising the decedent's residuary estate to her attorney was drafted by the attorney's secretary. (*Id.* at p. 762.) Finding sufficient evidence of active participation by the attorney, the court ruled that the presumption of undue influence applied. (*Id.* at p. 764.)

both consistent with and supportive of the lower court's holding: none require proof that the benefit to an attorney be "undue."

For the foregoing reasons, we agree with the trial court that a presumption of undue influence arises upon proof that the person alleged to have exerted undue influence (1) had an attorney-client relationship with the testator at the time the will was prepared, (2) actively participated in preparation or execution of the will, and (3) benefited thereby. Alternatively, for the reasons discussed below, we affirm the trial court's express finding that Carson *did* unduly benefit under the 1990 will.

### 2. *The Evidence Regarding Undue Benefit*

When determining whether there is sufficient evidence to support the trial court's finding of undue benefit, we follow established rules of appellate review: We view factual matters most favorably to the prevailing party and in support of the judgment. We defer issues of credibility to the trier of fact. Additionally, we resolve all conflicts in the evidence in favor of the respondents. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].) Our power "begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion" reached by the trier of fact. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

Appellants contend that the trial court improperly relied on evidence of "general influence" to find undue benefit.[6] Appellants interpret *Estate of Sarabia, supra,* 221 Cal.App.3d at p. 607, as limiting the court's undue benefit analysis to determining whether appellants or the Charities are the more obvious objects of Auen's testamentary disposition. The analysis is not as narrow as appellants contend.

*Sarabia* states that the undue benefit requirement involves a qualitative analysis. (*Estate of Sarabia, supra,* 221 Cal.App.3d at p. 607.) " '[E]very case must be viewed in its own particular setting.'[Citations.]" (*Ibid.*) The *Sarabia* court affirmed a jury instruction defining undue benefit as "something that's unwarranted, excessive, inappropriate, unjustifiable or improper." (*Id.* at p. 604.)

In the present case, there is ample evidence of undue benefit. Specifically, we find substantial evidence in the record that Carson exploited her "close"

---

[6]Appellants do not challenge the trial court's rulings that (1) a confidential relationship existed between Auen and Carson, and (2) Carson actively participated in preparation of the 1990 will.

relationship with Auen to obtain undue benefits. The "Auen-Carson Properties" arrangement is evidence that this exploitation was continuous from 1986 until Auen's death.[7] The control and manipulation Carson exercised over Auen by virtue of the "Auen-Carson Properties" arrangement is strong evidence that the devise of the Women's Hotel was an undue benefit to appellants. This conclusion is further supported by evidence of Carson's active participation in the drafting and delivery of the 1990 will.

Not only did Carson obtain benefits for herself under the 1990 will, members of Carson's family—some of whom Auen barely knew—received substantial gifts as well. An undue benefit can be shown by benefit to the person in the confidential relationship or by benefit to another person. (*Estate of Clegg* (1978) 87 Cal.App.3d 594, 602 [151 Cal.Rptr. 158].) Thus, the gifts to Carson's family and friends are also evidence of undue benefit, and support application of a presumption of undue influence in this case.

■ Appellants are correct that the *Sarabia* court noted that the trier of facts should appreciate the "respective relative standings of the beneficiary and the contestant to the decedent" so that it can determine which is the more obvious object of the decedent's testamentary disposition. (*Estate of Sarabia, supra,* 221 Cal.App.3d at p. 607.) Evidence relevant to this determination "may include dispositional provisions in previous wills executed by the decedent [citation], or past expressions of the decedent's testamentary intentions. [Citation.] It may also encompass a showing of the extent to which the proponent would benefit in the absence of the challenged will. [Citation.]" (*Ibid.*) ■ In the present case, the Charities were the primary beneficiaries under Auen's 1984 will. And, Carson admitted that the 1984 will reflected Auen's testamentary intent at the time it was executed. Further, appellants would receive no benefit from Auen's estate absent the 1990 will.

Thus, contrary to appellants' contention, there is substantial evidence in the record to support the trial court's finding of undue benefit and its application of the presumption of undue influence.

### 3. *The Presumption of Undue Influence Was Not Rebutted*

■ "It is for the trier of fact to determine whether the presumption will apply and whether the burden of rebutting it has been satisfied. [Citations.]"

[7]The court found this arrangement was a direct violation of rule 5-101 of the California Rules of Professional Conduct and of Carson's fiduciary duty, and that it was fundamentally unfair to Auen, who received far less income and incurred more expenses than would have been the case if Auen had renewed her lease with Kircher.

(*Estate of Sarabia, supra*, 221 Cal.App.3d at p. 605.) We review the trial court's finding that appellants failed to rebut the presumption of undue influence under the substantial evidence rule like any other issue of fact. (*Estate of Gelonese, supra*, 36 Cal.App.3d at p. 863.)

Appellants' argument that it rebutted the presumption of undue influence is perplexing because it is based primarily on alleged insufficiencies in the Charities' evidence. But, once the presumption was invoked, the burden of proof shifted *to appellants* to prove there was no undue influence. (See, e.g., *Estate of Phillipi, supra*, 76 Cal.App.2d at p. 103; *Estate of Corbett* (1954) 123 Cal.App.2d 465, 470 [266 P.2d 935]; *Estate of Clegg, supra*, 87 Cal.App.3d at p. 603.)

Appellants' only argument is that evidence offered at trial shows Auen's close personal relationship with Carson and her family. "[A]lthough kindness and attention alone would not constitute undue influence, they might, when combined with other factors, amount to such influence." (*Estate of Rohde, supra*, 158 Cal.App.2d at p. 27.) As discussed above, there was also evidence that Carson exploited her relationship with Auen and improperly involved herself in Auen's business dealings and in the drafting of the 1990 will in order to further Carson's interests, regardless of the effect on Auen. Substantial evidence supports the trial court's finding of undue influence.

### B. *Invalidation of the Entire Will*

Appellants contend that, even if the finding of undue influence is upheld, the trial court erred by invalidating the entire 1990 will. They argue that only the devise of the Women's Hotel to appellants should have been invalidated.

The Charities contend that appellants did not ask for partial revocation in the trial court and cannot raise the issue on appeal. Indeed, appellants' citations to the record illustrate that Lawson was the only party that urged the trial court to revoke part of the 1990 will. In fact, appellants argued in their closing trial brief that "Partial Invalidity Was Not Shown" and that "The will should be upheld." Even if we interpret appellants' nebulous references to the partial revocation doctrine as preserving the issue for appeal, we agree with the trial court that the entire will should be revoked.

"The execution or revocation of a will or a part of a will is ineffective to the extent the execution or revocation was procured by duress, menace, fraud, or undue influence." (Prob. Code, § 6104.) "It is the general rule that if the whole will is the result of the presence of undue influence, the will is

totally invalidated; but if only a part of the will was thus procured, that part may be rejected as void, but the remainder, which is the outcome of the testator's free will, is valid if it is not inconsistent with and can be separated from the part which is invalid. . . ." (*Estate of Molera* (1972) 23 Cal.App.3d 993, 1001 [100 Cal.Rptr. 696] [citations omitted].)

The trial court found that Carson's undue influence permeated the 1990 will. The record is replete with evidence to support this conclusion. For example, Carson actively participated in the drafting of Auen's notes which were used by Siggins to prepare the 1990 will. Carson influenced Auen to substitute her favorite charity for the Charities Auen had previously selected. Further, the "Auen-Carson Properties" arrangement illustrates that Carson was in a position to and did influence Auen to advance Carson's personal interests. In light of this evidence, it is clear that the gifts to Carson's family and friends were as much a result of undue influence as was the devise of the Women's Hotel directly to Carson and her husband.

In short, we agree with the trial court that the will must be revoked in its entirety.

## C. *The Joint Accounts*

■ The trial court ruled that all money withdrawn from the joint accounts after Auen's death must be returned to Auen's estate, except for money used to pay for mandated earthquake repairs to the Women's Hotel. Appellants contend that this ruling was erroneous because section 5302 of the Probate Code prohibits application of the presumption of undue influence to set aside a joint tenancy account. Section 5302, subdivision (a) of the Probate Code provides: "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent." (Prob. Code § 5302, subd. (a), hereinafter section 5302(a).)

Appellants contend that, because section 5302(a) contains a higher burden of proof than that required to raise a presumption of undue influence, the presumption of undue influence was not sufficient to set aside the joint accounts. Appellants cite no authority to support their interpretation of section 5302(a) and we find none.

However, we need not interpret section 5302(a) because it is simply inapplicable to "[a]n account established for deposit of funds of a partnership, joint venture, or other association for business purposes." (Prob. Code,

§ 5122, subd. (b)(1).)[8] Carson repeatedly testified that the "Auen-Carson Properties" arrangement was a type of joint venture. Further appellants do not and cannot dispute that the joint accounts were established for business purposes. We hold that, on these facts, section 5302 of the Probate Code does not apply to these joint accounts.

### D. *The Inter Vivos Transfers*

Appellants' challenge to the court's ruling setting aside the inter vivos transactions is based primarily on their contention that Carson did not exercise undue influence over Auen. ■ The presumption of undue influence applies to all transactions between an attorney and his or her client for the benefit of the former. (*Estate of Witt*, 198 Cal. at p. 419.) Cases decided under repealed Civil Code section 2235 confirm that the presumption is not limited to will disputes. (*Ball* v. *Posey, supra,* 176 Cal.App.3d at p. 1214 [applying presumption in action for conversion, breach of fiduciary duty and fraudulent disposition of client's property]; *Barbara A.* v. *John G., supra,* 145 Cal.App.3d at pp. 382-384 [recognizing presumption can apply to claims against lawyer for battery and deceit]; *Rebmann* v. *Major* (1970) 5 Cal.App.3d 684, 688 [85 Cal.Rptr. 399] [applying presumption to deed purporting to transfer real property to attorney's minor children].) For reasons already discussed, we affirm the court's finding with respect to Carson's exertion of undue influence over Auen.

Application of the presumption of undue influence to the deed of the Women's Hotel is supported by additional evidence pertaining to Carson's preparation of the deed and her decision to keep the deed a secret.[9]

The trial court set aside the purported oral gifts of Auen's jewelry, furniture and paintings, not only on the basis of undue influence but also pursuant to section 1147 of the Civil Code, which provides: "A verbal gift is not valid, unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee." (Civ. Code, § 1147.) There is substantial evidence to support the trial court's conclusion that Auen did not deliver the alleged gifts to appellants.

---

[8]The limitation set forth in Probate Code section 5122, subdivision (b)(1) applies to section 5302(a) by virtue of section 5120 of the Probate Code, which provides: "Unless the provision or context otherwise requires, the definitions in this article govern the construction of this part." (Prob. Code, § 5120.)

[9]This evidence is strikingly similar to another case involving Carson in which, several decades earlier, she drafted a deed on behalf of her sick and elderly neighbor purporting to transfer that neighbor's property to Carson's children. (*See Rebmann* v. *Major, supra,* 5 Cal.App.3d at p. 684.)

E. *Alleged Procedural Errors*

Appellants argue the Charities did not have standing to bring civil actions challenging the inter vivos transactions because (1) the Charities did not seek probate of the 1984 will, and (2) consolidation of the probate proceeding with the civil actions created some sort of jurisdictional error.

The Charities' status as interested parties in these proceedings is not dependent on the admission of the 1984 will to probate. (See *Estate of Plaut* (1945) 27 Cal.2d 424, 428 [164 P.2d 765, 162 A.L.R. 837]; *Estate of Arbuckle* (1950) 98 Cal.App.2d 562, 566 [220 P.2d 950, 23 A.L.R.2d 372].) Further, we see nothing untoward or improper about the consolidation. (See, e.g., *Estate of Baker* (1982) 131 Cal.App.3d 471 [182 Cal.Rptr. 550]; *Estate of Bliss* (1962) 199 Cal.App.2d 630, 640-641 [18 Cal.Rptr. 821].)

 "The fact that there is a fundamental distinction between the law and equity jurisdiction of the superior court and its probate jurisdiction (a strictly limited one) would in no way prohibit the consolidation of a contested probate proceeding and an equitable action for purposes of trial. The court has jurisdiction of both matters and the consolidation is made to save all parties money and time and is in the interests of a more practical and efficient administration of justice." (*Estate of Bliss, supra*, 199 Cal.App.2d at pp. 640-641.)

"Whether separate actions shall be consolidated for trial is a matter within the discretion of the trial court and its decision will not be disturbed on appeal absent a clear showing of abuse of discretion." (*Estate of Baker, supra*, 131 Cal.App.3d at p. 485.) We are clear that the trial court did not abuse its discretion by consolidating the proceedings.

The trial court permitted the National Federation to file a petition for revocation of the 1990 will more than 120 days after the will was admitted to probate despite the 120-day limitations period set forth in section 8270 of the Probate Code. The court permitted the late filing because it found appellants concealed their filing of the 1990 will from the Charities. Appellants do not contest this ruling. Rather, they contend that Lawson, the Heart Association and the Cancer Society should not have been permitted to participate in these proceedings.

Lawson filed a written pleading responding to the National Federation's Petition within 30 days of the filing of the Petition as required under section 8271, subdivision (a) of the Probate Code and was, therefore, entitled to participate in these proceedings. (Prob. Code, § 8271, subd. (a).)

Contrary to their contentions on appeal, appellants did not object to the Heart Association's motion to intervene in the probate action. They have, therefore, waived their right to object now. (*Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 856-857 [176 Cal.Rptr. 239]; *Cushman* v. *Cushman* (1960) 178 Cal.App.2d 492, 498 [3 Cal.Rptr. 24]; *Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 319 [74 Cal.Rptr. 534, 449 P.2d 750].) The Heart Association was also entitled to participate in the proceedings below because it is the plaintiff in one of the civil actions consolidated with the Petition for trial.

Finally, appellants contend the trial court did not have jurisdiction to award costs to the Cancer Society because its only role in these proceedings was as an intervener in the civil action. As discussed above, consolidating the civil actions with the Petition was entirely appropriate; as a consequence, the Cancer Society became a party, and ultimately a prevailing party, in the trial court and was thus entitled to recover its costs. (*Estate of Bliss, supra,* 199 Cal.App.2d at p. 641.)

## V. DISPOSITION

The trial court's judgment is affirmed in all respects.

Smith, Acting P. J., and Phelan, J., concurred.